Eldrake Maurice SMITH, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 01–97–00951–CR, 01–97–00952–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Feb. 25, 1999.

Rehearing Overruled March 17, 1999.

Allen C. Isbell, Houston, for appellant.

John B. Holmes, Calvin Hartmann, Houston, for Appellee.

Panel consists of Justices MIRABAL, O'CONNOR, and NUCHIA.

## OPINION

MICHOL O'CONNOR, Justice.

Eldrake Maurice Smith, the appellant, appeals two convictions of two felony offenses, obtaining a controlled substance by fraud and felony escape. We affirm.

## Background

At around 7:00 p.m. on May 1, 1997, the appellant entered a Walgreen's store and handed the pharmacist a prescription. The patient identified on the prescription was Rosemary Dixon. The pharmacist verified the spelling of the patient's name, as well as the address, phone number, and date of birth. The pharmacist told the appellant it would take approximately 20 or 25 minutes to fill the prescription. The appellant insisted he needed the medicine quickly, but the pharmacist told him that it was a busy time of day. He suggested the appellant leave and return later to pick up the prescription. The appellant agreed and left the store.

Several things about the prescription concerned the pharmacist. First, the prescription was for eight ounces of Phenergan with codeine cough syrup, whereas a typical prescription is for only four ounces. Second, the handwriting and the doctor's signature on the prescription form were very neat. Third, the pharmacist was concerned because a person other than the patient was presenting a prescription for a narcotic drug. Finally, the doctor on the prescription was not one from whom the pharmacist frequently received prescriptions. Based upon all of these factors, the pharmacist decided to call the doctor for verification.[1]

After learning that the prescription was not valid, the pharmacist contacted the authorities. Harris County Sheriff's Deputy Pruitt–Bradford responded to the call. After talking to the pharmacist, she walked around the store and waited for the pharmacy personnel to page her when the appellant returned to pick up the medicine.

1. The doctor whose name appeared on the prescription testified at trial. He said he did not have a patient named Rosemary Dixon, he did not recognize the handwriting on the prescription, and the signature on the form was not his.

The doctor said he had not used the prescription forms that this prescription was written on since 1993 or 1994. The doctor said that since March of 1997, he has had many problems with prescriptions being written on the outdated forms.

The appellant returned at around 9:00 p.m. The deputy was paged by the pharmacy personnel. The deputy saw the appellant as he paid for the prescription and was handed the medicine and the receipt. The appellant opened the bottle, and just as it appeared he was going to drink it, the deputy arrested him for passing a forged prescription.

The deputy asked the appellant to have a seat in the pharmacy's waiting area until other officers arrived to assist her. The appellant initially sat down, but then stood up, pushed the deputy aside, and began running down the aisle. The deputy caught the appellant and, with the help of a customer, subdued him until other officers arrived.

The appellant was indicted for two felonies, obtaining a controlled substance by fraud and felony escape. The appellant pled "not guilty" to both charges, and "not true" to the two enhancement paragraphs. The appellant was convicted on both charges by a jury. The trial court found the enhancement paragraphs to be true, and assessed punishment at 35 years imprisonment.

### Legal Sufficiency of the Evidence

In points of error one and two, the appellant claims the evidence is legally insufficient to support the jury's verdict. The appellant attacks the State's proof regarding the amount of codeine contained in the prescription he obtained. He claims the State proved that he was only guilty of a misdemeanor offense,[2] rather than a felony. To be convicted of a felony, he argues the State was required to prove an additional element, that he possessed at least 200 milligrams, or .2 grams, the minimum amount of codeine required for a felony conviction. The State responds by arguing it proved all the ele-

ments of the offense required by the statute. We agree with the State.

When reviewing the legal sufficiency of the evidence, we view the evidence in the light most favorable to the verdict and ask whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Short v. State*, 874 S.W.2d 666, 667 (Tex.Crim.App.1994); *Reece v. State*, 878 S.W.2d 320, 325 (Tex.App.—Houston [1st Dist.] 1994, no pet.). We may not sit as a thirteenth juror and disregard or reweigh the evidence. *Moreno v. State*, 755 S.W.2d 866, 867 (Tex.Crim.App.1988); *Reece*, 878 S.W.2d at 325. The State has the burden to prove the essential elements of the crime beyond a reasonable doubt. *Short*, 874 S.W.2d at 667; *Wynn v. State*, 847 S.W.2d 357, 359 (Tex.App.—Houston [1st Dist.] 1993), *aff'd*, 864 S.W.2d 539 (Tex.Crim.App. 1993). We will not reverse a judgment on sufficiency grounds if there is evidence in the record that establishes guilt beyond a reasonable doubt. *Reece*, 878 S.W.2d at 325.

We review the sufficiency of the evidence based on the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex.Crim.App.1997); *Borrego v. State*, 966 S.W.2d 786, 790 (Tex.App.—Houston [1st Dist.] 1998, no pet.). A hypothetically correct jury charge would be one that accurately sets out the law, does not unnecessarily increase the State's burden of proof or restrict the State's liability theories, and adequately describes the particular offense for which the defendant was tried. *Malik*, 953 S.W.2d at 240.

■ We look at the penal provisions to determine the elements of possession of a controlled substance by fraud.[3] Under the

---

2. An offense under section 481.129(a) of the Health and Safety Code is a Class A misdemeanor if the controlled substance is listed in Schedule V. Tex. Health & Safety Code § 481.129(d). Schedule V includes a controlled substance that

is a compound, mixture, or preparation containing limited quantities of *not more than 200 milligrams of codeine, or any of its salts per 100 milliliters or per 100 grams*. Tex. Health & Safety Code § 481.032 (emphasis added).

3. We note that the relevant statutes in the Health and Safety Code have been amended and recodified effective January 1, 1998. Because the substance of the relevant statutes has not been changed, all references are to the current provisions of the Health and Safety Code.

The following chart is helpful in analyzing the penal provisions of the Health and Safety Code:

Health and Safety Code, a person commits an offense if the person knowingly or intentionally possesses or attempts to posses a controlled substance by misrepresentation, fraud, forgery, deception, or subterfuge. Tex. Health & Safety Code § 481.129(a)(4)(A). An offense under section 481.129(a) is a third degree felony if the controlled substance is listed in Schedule III or IV. Tex. Health & Safety Code § 481.129(d)(2). Schedule III includes a material, compound, mixture, or preparation containing "not more than 1.8 grams of codeine, or any of its salts, per 100 milliliters or not more than 90 milligrams per dosage unit." Tex. Health & Safety Code § 481.032.

A Schedule II offense (a second degree felony) is a greater offense than a Schedule III offense (a third degree felony). *Compare* Tex. Health & Safety Code § 481.129(d)(1) *with* Tex. Health & Safety Code § 481.129(d)(2). A person commits a Schedule II offense by possessing any amount of codeine greater than that needed to commit a Schedule III offense. Therefore, a Schedule II offense is committed when there is an amount of codeine greater than 1.8 grams per 100 milliliters or greater than 90 milligrams per dosage unit.

Based on sections 481.129(a)(4)(A), 481.129(d)(2), and 481.032 of the Health and Safety Code, a hypothetically correct jury charge for the third degree felony offense of obtaining a prescription by fraud would have instructed the jury to find the appellant guilty if it found that he knowingly or intentionally possessed or attempted to possess any material, compound, mixture, or preparation containing *not more than 1.8 grams of codeine*, or any of its salts per 100 milliliters, *or not more than 90 milligrams per dosage unit*, by misrepresentation, fraud, forgery, deception, or subterfuge. The State was required to prove only one of the alternate theories of the offense. *Lawton v. State*, 913 S.W.2d 542, 551 (Tex.Crim.App.1995). Proof of guilt under one theory of the offense will suffice for the conviction. *Id.*

The appellant concedes the State proved he was in possession of more than 90 milligrams of codeine per dosage unit.[4] By proving the appellant possessed more than 90 milligrams per dosage unit, the State actually proved the appellant committed a Schedule II offense (a second degree felony). *See* Tex. Health & Safety Code § 481.032. This means the State proved the appellant committed an offense greater than the one of which the appellant was convicted. A conviction for a greater offense than is alleged in the charging instrument is proper if the evidence supports the conviction. *See DeDonato v. State*, 819 S.W.2d 164, 166–68 (Tex. Crim.App.1991) (upholding conviction for a greater offense despite the inability to ascertain whether the State was alleging a Class B or a Class C misdemeanor); *Trujillo v. State*, 809 S.W.2d 593, 594 (Tex.App.—San Antonio 1991, no pet.) (upholding conviction

| Schedule | Offense | Amount of Codeine | Range of Codeine |
|---|---|---|---|
| V (formerly § 481.036 now at § 481.032) | misdemeanor (§ 481.129(d)(3)) | not more than 200 mg per 100mL or per 100 grams | 200mg/100mL or less OR 200mg/100g or less |
| III (formerly § 481.034(3) now at § 481.032) | third degree felony (§ 481.129(d)(2)) | not more than 1.8g per 100mL OR not more than 90 mg per dosage unit | more than 200 mg/ 100mL but less than or equal to 1.8g/100mL OR 90mg/dosage unit or less |
| II (formerly § 481.033 now at § 481.032) | second degree felony (§ 481.129(d)(1)) | more than 1.8g per 100mL OR more than 90mg per dosage unit | more than 1.8g/100mL OR more than 90mg/dosage unit |

4. The pharmacist testified that the codeine given to the appellant contained more than 90 milligrams per dosage unit.

for a Class B misdemeanor even though the information did not allege a factor elevating the offense from a Class C misdemeanor). The appellant cannot complain when he is convicted of a lesser offense than proven.

Viewing the evidence in the light most favorable to the verdict, we find a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. At trial, the State presented evidence showing the appellant knowingly and intentionally obtained codeine, a controlled substance, by presenting a forged prescription to the pharmacist. The pharmacist said he filled the prescription for the amount stated on the prescription, eight ounces of cough syrup. This was double the amount of a typical prescription. The pharmacist testified that the appellant was in possession of more than 90 milligrams per dosage unit. The amount of codeine in the appellant's possession was not an issue at trial. The appellant did not present any evidence to dispute the State's evidence regarding the amount of codeine in his possession, and he did not raise the issue at any other time during trial.

Because the State proved the appellant was in possession of more than 90 milligrams per dosage unit of codeine, we need not reach the merits of the appellant's argument concerning whether the State was required to prove the appellant possessed more than 200 milligrams of codeine.

We overrule points of error one and two.

*Felony Escape Conviction*

In points of error three and four, the appellant challenges his conviction of felony escape, claiming that the evidence did not show he was under arrest for a felony offense when he escaped from custody. His argument depends on the merits of points of error one and two to prove he was not guilty of a felony, but only of a misdemeanor. Because we find the appellant was properly convicted of a felony, this argument is without merit.

We overrule points of error three and four.

We affirm the trial court's judgment.