**John Paul BORREGO, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–96–00408–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

April 2, 1998.

---

**9.** *See Continental Casualty Co.,* 740 S.W.2d at 430.

Leora Teicher Kahn, Houston, for Appellant.

John B. Holmes, Barbara A. Drumheller, Houston, for Appellee.

Before SCHNEIDER, C.J., and HEDGES and NUCHIA, JJ..

## OPINION

HEDGES, Justice.

Appellant, John Paul Borrego, was convicted by a jury of the crime of capital murder. Because the State did not seek the death penalty, he received a mandatory sentence of life imprisonment from the trial judge. *See* Tex. Penal Code Ann. § 12.31(a) (Vernon 1994). Appellant brings 15 points of error on appeal challenging the sufficiency of the evidence to support his conviction and the denial of the motion to suppress his confession. We affirm.

## The Facts

Twenty-five-year-old Wendy White, the complainant, and James Sifuentes, appellant's first cousin, lived together in an apartment in Houston, Texas, for six years. James's twin brother Mark shared a nearby apartment with Gerald Vidaurre. Appellant frequently spent the night in Vidaurre's apartment, though he was never invited to stay and never had any money for food or rent. James and Mark Sifuentes had another brother, Gene, who had an apartment in the same complex with Wendy and James. Wendy White knew appellant through her relationship with James.

James Sifuentes spent the night of May 8, 1994, with Wendy. He had to be at work early on May 9, so he left while Wendy was still asleep. He set the security alarm and locked the door on his way out at 5:45 a.m. Wendy White was fine when she spoke with her mother by telephone twice that day at 10:00 a.m. and 12:50 p.m.

James Sifuentes left work at 4:00 p.m. and arrived at his brother Gene's apartment at 5:00. Appellant arrived, as well as James's brother-in-law, Keith Blackmon. Gene Sifuentes wanted to roll a marihuana cigarette, but he had no papers. Appellant went to another apartment and bought marihuana. He had approximately thirty or forty dollars in his possession which he had not had two days earlier. James phoned Wendy's apartment, but there was no answer. When appellant returned to Gene's apartment, James left for Wendy's to look for rolling papers.

James Sifuentes noticed that Wendy's car was parked in front of the apartment, which he considered odd because she had not answered the telephone. He used his key to open the locked door. The security alarm was not on. James went through the apartment calling Wendy's name. He found her body underneath a pile of sheets on the bedroom floor. James screamed and immediately reached for the phone Wendy kept by the bed, but it was gone. He ran outside screaming for help, shouted to a neighbor to call 911, then got into his vehicle and returned to Gene's apartment.

James, Gene, Mark, Keith Blackmon, and appellant all went to Wendy's apartment. Appellant did not go into the bedroom. While they were there, the police and paramedics arrived.

There was no sign that the apartment had been forcibly entered, but the bedroom was in chaos. There were blood spatters and smears on the walls and carpet. The telephone cord had been yanked from the wall with such force that the plastic plug remained in the outlet. The mattress was partially off the box spring and all the sheets, a comforter, and a pillow were on the floor. The waste basket had been knocked over.

Wendy White was wearing a bra, T-shirt, shorts, socks, and tennis shoes. Her purse, a videocassette recorder, and a telephone were missing from the apartment.

Officers found a metal steak knife in the kitchen sink. The knife had no blood on it and was not remarkable.

An autopsy revealed three stab wounds to the complainant's chest, one of which was a fatal wound to the left lung. There were hemorrhages, indicating asphyxiation, on the face and neck. There were also abrasions on both sides of the neck indicative of strangula-

tion with hands, or with something hand-held. Even if the complainant had not been stabbed, she would have died of strangulation. The clothes worn by Wendy White at the time of her death were turned over to police. The medical examiner's office also submitted vaginal swabs to the police department crime lab.

Two weeks after the murder, James Sifuentes noticed that appellant had a pair of small Ray Ban sunglasses exactly like the ones Wendy kept in her purse. Appellant said that the glasses belonged to his brother-in-law. He would not look at James afterwards.

Police investigators interviewed appellant on July 16, 1994. He said that he had been in Damon, Texas, visiting relatives on the day of the murder and that he went to Gene's apartment that evening before the body was discovered. He also told police that he had purchased the sunglasses for ten dollars from a man on Kegans Ridge. The police determined from members of appellant's family that he had not been in Damon, Texas, on May 9, 1994.

On July 29, 1994, appellant voluntarily gave blood and hair samples to the police. Confronted with the fact that his family contradicted his alibi, appellant said that he had been with a prostitute whom he did not know how to contact.

Crime lab analysis determined that there was semen on the crotch of the complainant's shorts. The vaginal swab was also positive for semen. Polymerase chain reaction DNA analysis of the semen on the shorts and the vaginal swab was consistent with appellant's known DNA. Only 4% of the Hispanic population would produce the same result. Restriction fragment length polymorphism DNA analysis of the shorts and the vaginal swab was also consistent with appellant's DNA. This test was more specific and narrowed the possible matches to one of 232 of the Hispanic population. Another DNA comparison of the semen in the crotch of the complainant's shorts with appellant's DNA, using the restriction fragment length polymorphism method, resulted in a match that would occur with only one of 30,000 members of the Hispanic population.

Police investigators received the result of the DNA analysis on February 9, 1995, and obtained a warrant for appellant's arrest. Appellant was arrested after a foot chase. He was advised of his legal rights by the police and said that he understood his rights. Appellant waived his rights and gave an oral statement which was recorded on audiotape. Appellant was then taken to a magistrate and again advised of his rights. Appellant's taped statement was admitted into evidence.

Appellant's version of the events both on the audiotape and from the witness stand was that he left his vehicle at Mark's apartment and walked to Wendy White's apartment at about 1:30 or 2:00 p.m. She let him in, they both removed all of their clothes, and engaged in consensual sexual intercourse. Then they put on their clothes and appellant made a phone call to ask for a ride home. Wendy became so enraged because he was leaving that she went to the kitchen and got a knife. She ran at appellant with the knife in her hand, swinging it at him and screaming. Appellant grabbed the knife and blacked out. His next recollection was of Wendy White on the floor, stabbed and bloody. Appellant guessed that he had stabbed and choked her, and he realized that he was in trouble. He rinsed off the knife, put it back in the kitchen drawer, and threw the bed covers on top of the body. In an effort to make it appear that the apartment had been burglarized, appellant put a telephone, the VCR, and the complainant's purse into a pillowcase and left the apartment. He locked the front door with her key, walked down Wilcrest, and threw the pillowcase and its contents into a convenience store dumpster. Appellant then walked back to Mark's apartment.

Appellant conceded that he killed the complainant, but he maintained that the sexual intercourse and the theft were entirely separate events occurring before and after the murder.

## Legal and Factual Sufficiency

### a. Waiver

■ The State contends that appellant admitted his guilt during his testimony and

waived any complaint concerning the sufficiency of the evidence, citing *DeGarmo v. State,* 691 S.W.2d 657, 661 (Tex.Crim.App. 1985), *McGlothlin v. State,* 896 S.W.2d 183, 186 (Tex.Crim.App.1995), and *McWhorter v. State,* 911 S.W.2d 538, 539 (Tex.App.—Beaumont 1995, no pet.).

We disagree. It is inappropriate to find *DeGarmo* waiver based on appellant's testimony. Appellant admitted the killing, but testified that he did not have the requisite intent to be guilty of capital murder. *See Lee v. State,* 964 S.W.2d 3 (Tex.App.—Houston [1st Dist.] pet. ref'd) (designated for publication). Therefore, appellant's statements did not constitute an admission that he committed the crime for which he was charged and convicted, *i.e.,* the crime of capital murder. *Id.,* at 7–8. *See also Smyth v. State,* 634 S.W.2d 721, 724 (Tex.Crim.App.1982).

We overrule the State's contention that appellant waived his right to challenge the sufficiency of the evidence.

### b. Standards of Review

In points of error one, two, four, six, and eight, appellant challenges the legal sufficiency of the evidence to support his conviction. When conducting a legal sufficiency review of the evidence, we view the evidence in the light most favorable to the prosecution. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *McDuff v. State,* 939 S.W.2d 607, 614 (Tex. Crim.App.1997). The issue is whether any rational trier of fact could find the crime's essential elements beyond a reasonable doubt. *Jackson,* 443 U.S. at 319, 99 S.Ct. at 2789; *McDuff,* 939 S.W.2d at 614; *Green v. State,* 891 S.W.2d 289, 297 (Tex.App.—Houston [1st Dist.] 1994, pet. ref'd). If there is evidence that establishes guilt beyond a reasonable doubt, and if the fact finder believes the evidence, we will not reverse the judgment for insufficient evidence. *Moreno v. State,* 755 S.W.2d 866, 867 (Tex.Crim.App. 1988); *Reece v. State,* 878 S.W.2d 320, 325 (Tex.App.—Houston [1st Dist.] 1994, no pet.).

In points of error three, five, seven, and nine, appellant challenges the factual sufficiency of the evidence to support his conviction. Since appellant's brief was filed in this Court, the Court of Criminal Appeals issued its opinion in *Cain v. State,* 958 S.W.2d 404 (Tex.Crim.App.1997), further explaining its opinion in *Clewis v. State,* 922 S.W.2d 126 (Tex.Crim.App.1996). To conduct a factual sufficiency review, we do not view the evidence through the prism of "in the light most favorable to the prosecution." *Cain,* 958 S.W.2d at 407; *Clewis,* 922 S.W.2d at 129 (Tex.Crim.App.1996); *Peoples v. State,* 928 S.W.2d 112, 118 (Tex.App.—Houston [1st Dist.] 1996, pet. ref'd). Instead, we examine all of the evidence impartially, and set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain,* 958 S.W.2d at 410; *Clewis,* 922 S.W.2d at 129; *Peoples,* 928 S.W.2d at 118. The jury is the judge of the facts. TEX.CODE CRIM. P. ANN. art. 36.13 (Vernon 1981); *Cain,* 958 S.W.2d at 407. We must defer to jury findings, and may find the evidence factually insufficient only where necessary to prevent manifest injustice. *Cain,* 958 S.W.2d at 407.

### c. Manner and Means of Death

In point of error one, appellant contends that the evidence was legally insufficient to prove beyond a reasonable doubt that the complainant's death was caused by stabbing *or* strangulation, as the jury was charged, because the assistant medical examiner testified that death resulted from a combination of both.

The first paragraph of the indictment charged capital murder based on the underlying offense of aggravated sexual assault. Omitting the formalities, the paragraph alleged that appellant did:

> while in the course of committing and attempting to commit the aggravated sexual assault of Wendy White, intentionally cause the death of Wendy White by stabbing Wendy White with a deadly weapon, namely, a sharp object *and* by strangling Wendy White with a deadly weapon, namely an unknown object.

(Emphasis added.) The second paragraph charged capital murder with the underlying offense of robbery. Again omitting the for-

mal portions, the paragraph charged that appellant did:

> while in the course of committing and attempting to commit the robbery of Wendy White, intentionally cause the death of Wendy White by stabbing Wendy White with a deadly weapon, namely a sharp object **and** by strangling Wendy White with a deadly weapon, namely an unknown object.

(Emphasis added.) The jury was charged disjunctively, in pertinent part, as follows:

> Now, if you find from the evidence beyond a reasonable doubt that on or about the 9th day of May, 1994, in Harris County, Texas, the defendant, John Paul Borrego, did then and there unlawfully, while in the course of committing or attempting to commit the aggravated sexual assault of Wendy White, intentionally cause the death of Wendy White by stabbing Wendy White with a deadly weapon, namely a sharp object **or** by strangling Wendy White with a deadly weapon, namely an unknown object; or

> If you find from the evidence beyond a reasonable doubt that on or about the 9th day of May, 1994, in Harris County, Texas, the defendant, John Paul Borrego, did then and there unlawfully, while in the course of committing or attempting to commit the robbery of Wendy White, intentionally cause the death of Wendy White by stabbing Wendy White with a deadly weapon, namely a sharp object **or** by strangling Wendy White with a deadly weapon, namely an unknown object, then you will find the defendant guilty of capital murder as charged in the indictment.

(Emphasis added.)

Appellant acknowledges that the proper practice is to plead in the conjunctive and charge in the disjunctive, as was done in this case. *See Kitchens v. State,* 823 S.W.2d 256, 258 (Tex.Crim.App.1991); *Zanghetti v. State,* 618 S.W.2d 383, 386–88 (Tex.Crim.App.1981); *Renfro v. State,* 827 S.W.2d 532, 536 (Tex. App.—Houston [1st Dist.] 1992, pet. ref'd). He argues, however, that measured against

the disjunctive charge, the evidence in this case falls short because the complainant died from both the stabbing and the strangulation. Appellant refers to the assistant medical examiner's testimony to that effect, and cites the *Benson–Boozer* line of cases.[1]

Since appellant filed his brief in this Court, the Court of Criminal Appeals issued its opinion in *Malik v. State,* 953 S.W.2d 234 (Tex.Crim.App.1997), expressly overruling *Benson* and its progeny. *Malik,* 953 S.W.2d at 239. The court held that sufficiency of the evidence should be measured by the elements of the offense as defined by the hypothetically correct jury charge for the case. *Id.* at 240. *See also Amos v. State,* 955 S.W.2d 468, 469 (Tex.App.—Fort Worth 1997, no pet. reported). Therefore, we no longer measure the sufficiency of the evidence by the jury charge given.

Even if we were still guided by the principles of *Benson–Boozer,* in this case the evidence would still be sufficient under the jury charge that was given. The assistant medical examiner testified that each cause of death was sufficient in and of itself to kill the complainant.

We overrule point of error one.

### d. Aggravated Sexual Assault

█ In points of error two and four, appellant contests the legal sufficiency of the evidence to prove (1) that he committed an aggravated sexual assault of the complainant and (2) that the murder occurred during the commission or attempted commission of aggravated sexual assault. In points of error three and five, appellant challenges the factual sufficiency of the evidence on these grounds.

Appellant committed aggravated sexual assault if he intentionally or knowingly caused the penetration of the female sexual organ of the complainant by any means without her consent while causing serious bodily injury or death in the course of the same criminal episode. *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(A), (2)(A) (Vernon 1994 &

---

1. *Benson v. State,* 661 S.W.2d 708, 715–16 (Tex. Crim.App.1982); *Boozer v. State,* 717 S.W.2d 608, 610 (Tex.Crim.App.1984).

Supp.1998). Appellant attempted to commit the offense if, with specific intent to commit the offense, he did an act amounting to more than mere preparation that tended but failed to effect the commission of the offense intended. His conduct constituted an attempt to commit an aggravated offense if an element that aggravated the offense accompanied the attempt. *See* TEX. PENAL CODE ANN. § 15.01(a), (b) (Vernon 1994).

Appellant bases his argument on the assistant medical examiner's testimony that the autopsy revealed no genital trauma. This evidence, he contends, was consistent with his testimony that he and the complainant engaged in consensual sexual intercourse.

First, the assistant medical examiner stated that the fact that there were no bruises or lacerations to the complainant's vagina did not mean she had not been sexually assaulted. Second, appellant's version of what transpired, *i.e.*, consensual sexual intercourse followed by an unrelated murder, was not consistent with the physical evidence. Appellant testified that he and the complainant removed all of their clothes and engaged in consensual sexual intercourse. Then they both dressed. It was later that she became angry and obtained a kitchen knife with which he stabbed her.

However, when she was stabbed, the complainant's bra was unfastened. She was wearing a bra with a front closure that was open and laying to the side. The bra was open when the complainant was stabbed in the chest because the bra had not been cut. From the location of the stab wounds, it would have been cut had it been fastened. Also, there were no panties found on or near the complainant's body.

Furthermore, as the exclusive judge of the credibility of the witnesses and the weight to be given their testimony, the jury was free to reject appellant's version of the facts, whether contradicted or not. *Wilkerson v. State*, 881 S.W.2d 321, 324 (Tex.Crim. App.1994); *see also Minx v. State*, 615 S.W.2d 748, 749 (Tex.Crim.App.1981).

Viewed in the light most favorable to the verdict, this was evidence from which any rational trier of fact could find beyond a reasonable doubt that appellant caused the death of the complainant while in the course of committing and attempting to commit the aggravated sexual assault of the complainant.

Turning to a factual sufficiency review, appellant erroneously contends, as he did in his legal sufficiency points of error, that his testimony concerning the consensual nature of the sexual intercourse was uncontradicted. He argues that the jury's finding against him on this issue was against the greater weight of the evidence and clearly unjust.

What weight to give contradictory testimonial evidence is within the sole province of the jury because it turns on an evaluation of credibility and demeanor. *Cain*, 958 S.W.2d at 408–409. The jury is the judge of the facts, and we must defer to the jury's determination of witness credibility. *Id.* at 407. Giving deference to the jury verdict and after examining all of the evidence impartially, we find that the verdict was not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust.

Appellant cites *Humason v. State*, 728 S.W.2d 363 (Tex.Crim.App.1987), and *Oaks v. State*, 642 S.W.2d 174 (Tex.Crim.App.1982), which are inapposite to this appeal. Those were circumstantial evidence cases in which acquittals for insufficient evidence were ordered based on the alternative reasonable hypothesis analytical construct disavowed in *Geesa v. State*, 820 S.W.2d 154, 159 (Tex. Crim.App.1991).

Appellant also cites *Urbano v. State*, 837 S.W.2d 114 (Tex.Crim.App.1992), for the proposition that his conviction can be sustained only by proof constituting a "high degree of certainty." In *Urbano* the Court wrote, "[W]e remain cognizant that 'proof beyond a reasonable doubt' means proof to a high degree of certainty," citing *Geesa v. State*, 820 S.W.2d 154, 162 (Tex.Crim.App. 1991). 837 S.W.2d at 116. This citation to *Geesa* was erroneous. The page of the *Geesa* opinion cited in *Urbano* set out the definitional instruction of "reasonable doubt" to be included in the jury charges of all criminal trials and does not include the words "high degree of certainty." In fact, they are not to be found in the *Geesa* opinion at all. In

*Urbano* the Court used the *Jackson v. Virginia* standard in deciding that "rational jurors could not conclude beyond a reasonable doubt" that Urbano had committed murder for remuneration. *Urbano v. State,* 837 S.W.2d at 117. We conclude that the "high degree of certainty" language in *Urbano* was not meant to establish a new standard of appellate review.

We overrule points of error two, three, four, and five.

The discussion of the remaining points of error does not meet the criteria for publication. Tex.R.App. P. 47.4, and is thus ordered not published.

The judgment is affirmed.

NUCHIA, J., concurs.