Jamey Andrew CHILES, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–97–00591–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

March 18, 1999.

Steven Greenlee, Houston, for Appellant.

John B. Holmes, Julie Kilbert, Houston, for Appellee.

Panel consists of Justices WILSON, TAFT, and NUCHIA.

## OPINION

SAM NUCHIA, Justice.

Appellant, Jamey Andrew Chiles, was charged by indictment with aggravated robbery. Appellant's motion to suppress his out-of-court statement to the police was denied by the trial court. The jury found appellant guilty and assessed punishment at forty years. We affirm.

## BACKGROUND

On June 11, 1996, David Jones took his wife's black 1982 Chevrolet Z28 to go to the store. Instead of going to the store, Jones drove over 80 miles to the Waterfront Apartments where he went to the apartment of Lonnie Lonidier. Jones's wife received a collect call from her husband around 11:15 p.m. from Lonidier's apartment. On June 14, 1996, the Pasadena Police were dispatched to the Waterfront Apartments to investigate a suspicious vehicle. The police immediately noticed a very foul odor coming from a black Z28. The police discovered Jones's body in the back seat of the vehicle.

Sergeant Clifton of the Pasadena Police Department received an anonymous telephone call which identified appellant and several other individuals as involved in Jones's death. At Clifton's request, appellant came to the police station. Appellant gave a written statement as to his involvement in a robbery of Jones, which eventually led to Jones's death.

According to appellant's written statement, Paul Routsi, C.B., and Lonidier all got together in early June 1996. Routsi told appellant that a man was coming to town to meet them to buy marijuana and they were going to hold him up. They decided that appellant would enter the apartment during the meeting and demand more money from the man for the marijuana. Appellant would then take out a handgun that Routsi gave him and rob all four of them. The man who

was coming into town was Jones. The meeting took place, and appellant entered the apartment and demanded the money. Jones said he did not have any more money. Appellant then pulled the gun and took everyone's wallets. Lonidier hit Jones over the head with a torque wrench appellant had rented from his work. Appellant left and was later met by the others, who had left Jones in Lonidier's apartment. Appellant returned the others' wallets and then they split the money from Jones's wallet. After consuming some drugs, Lonidier and appellant went back to the apartment and found that Jones appeared to be dead. Lonidier and appellant wrapped Jones in a sheet and placed him in his car. Lonidier took Jones's necklace and pager and threw them in a lake near the apartment complex.

Sergeant Clifton obtained the torque wrench from appellant's place of employment, and appellant identified it as the murder weapon. Appellant also accompanied the Houston Police Department dive team to the lake in an effort to locate the necklace and pager; however, these items were never found.

## DISCUSSION

### *Motion to Suppress Appellant's Statement*

In point of error one, appellant asserts the trial court erred in allowing appellant's written out-of-court statement to be admitted into evidence. Appellant filed a motion to suppress objecting to the admission of the out-of-court statement, which the trial court denied. Appellant contends that his written statement was involuntary and was obtained in violation of the Fifth Amendment of the United States Constitution.

We generally review a trial court's ruling on a motion to suppress for abuse of discretion. *Maddox v. State*, 682 S.W.2d 563, 564 (Tex.Crim.App.1985); *Santos v. State*, 822 S.W.2d 338, 339 (Tex.App.—Houston [1st Dist.] 1992, pet. ref'd). However, when presented with a question of law based on undisputed facts, we apply *de novo* review. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim. App.1997). Where the resolution of mixed questions of law and fact turns on an evalua-

tion of credibility and demeanor, we still review the evidence in the light most favorable to the trial court's ruling. *Id.* at 89. Here we have mixed questions of fact and law.

 "Only in instances when a statement stems from custodial interrogation must the State demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination." *Melton v. State,* 790 S.W.2d 322, 326 (Tex.Crim.App. 1990). "A person is in 'custody' only if, under the circumstances, a reasonable person would believe that his freedom of movement was restrained to the degree associated with a formal arrest." *Dowthitt v. State,* 931 S.W.2d 244, 254 (Tex.Crim.App.1996).

 On July 30, 1996, Sergeant Clifton, who was investigating Jones's death, attempted to speak with appellant. She left her card with appellant's father and asked that appellant give her a call. Appellant contacted Clifton the next day. She informed appellant that he was a suspect in the investigation of Jones's death and that she would like to discuss the case with him. Appellant agreed to come to the station. He received a ride from his girlfriend, Stephanie Jetty, and arrived at the station around 5:00 p.m.

When appellant arrived, he and Clifton went into one of the interview rooms. Clifton told appellant that she had spoken to other people regarding Jones's death and they fingered him as the ringleader. She told appellant she wanted to get his side of the story. Appellant and Clifton spoke for approximately one hour while appellant relayed his version of what happened. Clifton then asked appellant to make a written statement of what he told her. Appellant asked if he could go speak with his girlfriend and smoke a cigarette before making the written statement. Clifton showed appellant to the elevators, and appellant went downstairs unaccompanied. Appellant and his girlfriend went outside the station to smoke and talk. While they were outside, appellant indicated to Jetty that he would be coming home that night.

Approximately five minutes later, Clifton asked appellant if he was ready to proceed. Both appellant and Jetty accompanied Clifton to the interview room. Clifton gave appellant his *Miranda* warnings and asked him if he understood them. Clifton then typed appellant's statement on a computer as appellant relayed the events to her. Appellant's statement was typed on a form which stated at the top, "Statement of Person Not in Custody" and contained *Miranda* warnings. After completing the statement, Clifton gave appellant a copy and asked him to read it over to make sure it was accurate. After making an addition to the statement, appellant initialed next to each of the warnings and then signed each page of the statement indicating that he had read the statement and that it was voluntary.

Clifton testified that she did not believe she had enough to arrest appellant at any time during the time she spoke with him because she needed to do some further investigation. Appellant was allowed to leave the building and speak with his girlfriend during the interview. At no time did appellant ask that the interview stop. After giving his statement, appellant was free to leave. Appellant was not charged until November 7, 1996 or arrested until November 8, 1996, over three months after appellant gave Clifton his statement.

Appellant was not in custody at the time he made his statement to the police. *See Oregon v. Mathiason,* 429 U.S. 492, 494–95, 97 S.Ct. 711, 713–14, 50 L.Ed.2d 714 (1977) (holding appellant was not in custody when he voluntarily came to the station to answer questions regarding a burglary, was read his rights prior to giving his taped confession, and was allowed to leave after giving his statement).

We hold the trial court did not abuse its discretion in denying appellant's motion to suppress. We overrule appellant's first point of error.

### Legal Sufficiency

In point of error two, appellant asserts that there is insufficient evidence independent of appellant's confession as to the theft element of the *corpus delicti* of aggravated robbery.

An extrajudicial admission alone is insufficient to sustain a conviction. *Self v. State,* 513 S.W.2d 832, 835 (Tex.Crim.App. 1974); *Thomas v. State,* 807 S.W.2d 803, 805–06 (Tex.App.—Houston [1st Dist.] 1991, pet. ref'd). The defendant's extrajudicial admission must be corroborated by other evidence tending to show that a crime was committed. *Williams v. State,* 958 S.W.2d 186, 190 (Tex. Crim.App.1997). There must be independent evidence of the *corpus delicti,* not merely support for the credibility of the confession. *Gribble v. State,* 808 S.W.2d 65, 70 (Tex. Crim.App.1990). "[T]he quantum of independent evidence necessary to corroborate the *corpus delicti* in a criminal prosecution relying upon the extrajudicial confession of an accused need not be great." *Id.* at 71–72. There must be some evidence that "renders the *corpus delicti* more probable than it would be without the evidence." *Id.* at 72.

The *corpus delicti* of aggravated robbery consists of the infliction of serious bodily injury caused by the criminal act of another, during the course of committing a theft. TEX. PENAL CODE ANN. § 29.03 (Vernon 1994); *Thomas,* 807 S.W.2d at 806. Conduct occurring "in the course of committing theft" means "conduct that occurs in an attempt to commit, during the commission, or in immediate flight after the attempt or commission of theft." TEX. PENAL CODE ANN. § 29.01(1) (Vernon 1994). The actual commission of theft is not a prerequisite of the offense of robbery. *Autry v. State,* 626 S.W.2d 758, 762 (Tex.Crim.App.1982).

In this case, the record shows there is independent evidence that property of the victim was unlawfully taken, and that he received serious bodily injury during the course of his property being taken. The medical examiner testified that the victim's death was caused in part by blunt trauma to the head and neck. He further testified that the injuries were consistent with injuries caused by a torque wrench. Paul Ammons, appellant's boss, testified appellant rented a torque wrench on June 11 and 12, 1996. The victim's wife testified that the victim always wore his gold necklace and pager, and that he had these items with him when he left the house. She testified that her husband's necklace and pager were never returned to her. The autopsy report indicates that the necklace and pager were not items found on the victim.

Appellant cites *Ruff v. State,* 157 Tex. Crim. 514, 249 S.W.2d 922 (Tex.Crim.App. 1952), to support his contention that there is not sufficient evidence to support the theft element of aggravated robbery. *Ruff* is distinguishable from the present case. In *Ruff,* the appellant confessed that he and his friends beat the victim up and took his wallet. *Id.* at 923. The victim's wallet was found in the victim's pocket the next day. *Id.* There was evidence to show that one of the individuals gave appellant some money while they were seated at a cafe following the beating. *Id.* However, the Court held that the evidence was insufficient because there was no evidence to show the victim had any money and that the money appellant was given was from the victim. *Id.*

Finally, appellant asserts that the missing necklace and pager do not establish the theft element of robbery because appellant confessed that these items were taken after he and Lonidier believed the victim was dead. However, this argument is unpersuasive. Although not directly on point, the Texas Court of Criminal Appeals has held, in a capital murder case, that the fact that the victim was murdered prior to being deprived of his property did not vitiate the intent to steal. *Gentry v. State,* 770 S.W.2d 780, 797 (Tex. Crim.App.1988).

The evidence establishes that items known to be with the victim, his pager and necklace, were missing. The evidence also establishes that the victim was hit over the head with a torque wrench which in part caused the death of the victim. We hold there is some evidence which renders the *corpus delicti* more probable than it would be without the evidence. *See Gribble,* 808 S.W.2d at 71–72.

We overrule appellant's second point of error.

### Factual Sufficiency

In point of error three, appellant asserts that the evidence is factually insufficient to support the theft element of the *corpus delicti* of aggravated robbery. To conduct a

factual sufficiency review, we do not view the evidence through the prism of "in the light most favorable to the prosecution." *Cain v. State,* 958 S.W.2d 404, 407 (Tex.Crim.App. 1997); *Clewis v. State,* 922 S.W.2d 126, 129 (Tex.Crim.App.1996); *Borrego v. State,* 966 S.W.2d 786, 789 (Tex.App.—Houston [1st Dist.] 1998, no pet.). Instead, we examine all of the evidence impartially, and set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain,* 958 S.W.2d at 410; *Clewis,* 922 S.W.2d at 129; *Borrego,* 966 S.W.2d at 789. The jury is the judge of the facts. TEX.CODE CRIM. P. ANN. art. 36.13 (Vernon 1981); *Cain,* 958 S.W.2d at 407; *Borrego,* 966 S.W.2d at 789. We must defer to the jury findings, and may find the evidence factually insufficient only where necessary to prevent manifest injustice. *Cain,* 958 S.W.2d at 407; *Borrego,* 966 S.W.2d at 789.

Appellant does not assert any additional argument or evidence, other than the evidence he asserted to claim the evidence was legally insufficient. The jury was the exclusive judge of the credibility of the witnesses and the weight to be given their testimony. *Wilkerson v. State,* 881 S.W.2d 321, 324 (Tex. Crim.App.1994); *Borrego,* 966 S.W.2d at 791. It was within the province of the jury to reconcile the conflicts and contradictions in the evidence. *Bowden v. State,* 628 S.W.2d 782, 784 (Tex.Crim.App.1982); *Moody v. State,* 830 S.W.2d 698, 700 (Tex.App.—Houston [1st Dist.] 1992, pet. ref'd). We hold that the verdict is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. We hold that the evidence of the *corpus delicti* of aggravated robbery is factually sufficient to corroborate appellant's confession.

We overrule appellant's third point of error.

We affirm the trial court's judgment.