Opinion issued on February 12, 2004.





 


     





In The
Court of Appeals
For The
First District of Texas




NO. 01-02-01186-CR




JAMAL MARTINEZ HANCOCK, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 179th District Court
Harris County, Texas
Trial Court Cause No. 926994




MEMORANDUM OPINION
          
          A jury found appellant, Jamal Martinez Hancock, guilty of murder and assessed
punishment at confinement for 99 years. In his sole point of error, appellant contends
that the evidence is factually insufficient to sustain his conviction. We affirm.
Background
            Moises Reyes, a valet at the St. James Club, testified that, on May 2, 2002 at
approximately midnight, Brandon Naill, the complainant, and his friend, Brandon
Gurie, arrived at the club, and Reyes parked Naill’s jeep. When Naill and Gurie left
the club, a confrontation arose between Naill and Reyes over payment of the valet. 
Appellant approached the men and told Naill “don’t bother my partner.”


 Appellant,
Naill, and Gurie then argued. Naill and Gurie drove away, and Reyes saw appellant
walk toward the club entrance and then turn around and walk toward the entrance of
the parking lot. Reyes lost sight of appellant when appellant went behind a limousine
bus parked in front of the club. Reyes then heard five to seven gunshots, but he could
not see who was shooting. Appellant came back into view and went inside the club. 
Reyes heard appellant say, “Somebody is shooting like crazy out there.” Reyes
walked into the club behind appellant and saw appellant meet his friend, Patrick
Martinez, in the lobby. Reyes identified appellant in a photographic array and at trial.
          Gurie confirmed Reyes’s account of the confrontation and further testified that
appellant told Gurie, “I got something for you,” and “I’ll be right back motherfucker. 
Wait right here. I’ll be right back.” Appellant then backed up and placed his hands
underneath his shirt. Gurie thought that appellant planned on pulling out a gun or a
knife, so he bluffed and said, “I got something too.” Gurie started backing up and
suggested to Naill that they leave. Gurie lost sight of appellant as appellant walked
behind a bus near the club’s entrance. 
          Gurie further testified that Naill drove his jeep out of the club’s parking lot. 
After Naill had driven approximately 30 to 40 feet onto Rankin Road, the road in
front of the club, Gurie heard gunshots. First, he heard three quick shots, and Gurie
told Naill to duck as Gurie ducked down on the floorboard with his head between his
legs. Gurie heard more shots, heard glass shatter, and felt glass hit his shoulder. 
Then, Gurie heard one or two more shots fired. He then saw Naill’s head slumped
forward and noticed blood running down the side of his neck. Gurie tried to maintain
the steering to keep the jeep on the road, but could not, and the jeep hit a ditch near
Rankin Road. Gurie testified that he did not see who was firing the shots. Gurie
identified appellant in a photographic array and at trial as the man with whom he had
argued at the club. 
          Randy Gene Deimart, a cab driver, testified that he pulled into the club’s
parking lot at approximately 1:00 a.m. After Deimart parked, he saw a confrontation
between a white man and appellant, who he described as “short.”


 Deimart then saw
appellant run toward the club, go back near the club’s entrance near Rankin Road,
raise his arm, and start shooting. Deimart had parked his taxi approximately 40 to 50
feet from where appellant stood. He looked to see what appellant aimed at and saw
an “SUV” leaving the parking lot onto Rankin Road. After the shooting stopped,
Deimart saw appellant raise his shirt, put something in his pants, drop his shirt, and
run back toward the front of the club. During his testimony, Deimart explained how
he could not identify appellant from a photographic array but was able to narrow his
choices down to two photos—one of which contained appellant. At trial, Deimart
positively identified appellant as the shooter and testified that he had no doubt that
the shooter was the same person who had argued with the white men. 
          Juan Carlos Gravina, a security guard at the club, also confirmed that the
confrontation had occurred near the valet station. Gravina then saw the two white
men walk towards their jeep and the black man walk towards the entrance to the
parking lot. Gravina testified that the black man wore loose clothing and described
his height as shorter than the white men. After hearing several shots, Gravina saw the
same black man enter the club. Gravina was not asked to identify appellant at trial.
          Victor Stone Butts, another cab driver, had parked his cab behind the bus that
was in front of the club. Butts testified that he saw a black man wearing a dark
baseball cap with a red bill turned toward the back, a gray shirt, and baggy brown
pants leave the club. He then heard three shots and saw the same man with a gun in
his hand. He saw the man fire six more shots, all in the direction of Rankin Road. 
Butts testified that the man walked back toward the club, as if nothing had happened,
and appeared to put the gun in his waistband or pocket. Butts could not identify the
shooter from a photographic array, and he was not asked to identify appellant at trial.
          Dottie Winters, the front clerk at the club, saw a man she described as having
dark skin, a bald head, short, and wearing dark clothing, walk out of the club several
minutes after he first entered. Winters heard the gunshots at approximately 1:15 a.m. 
Afterwards, she saw the man re-enter the club and meet Martinez in the lobby. She
testified that the man appeared frightened and excited and told Martinez that they had
to leave. Winters could not identify appellant at trial.
          Patrick Martinez, appellant’s friend, testified that he and appellant arrived at
the club at approximately 1:00 a.m, and a few minutes later, appellant walked outside. 
Martinez thought that appellant walked outside to talk on his cell phone. A waitress
then approached Martinez to tell him someone was shooting outside. Martinez
headed for the front door to check on appellant. Before Martinez reached the door,
appellant ran inside and told Martinez that someone was shooting outside. Martinez
and appellant left the club and saw a jeep in the ditch. Martinez testified that
appellant told him that he had gotten into it with two white men. Appellant told
Martinez that he had helped out the valet because the two white men were “picking”
on the valet and were going to fight with the valet. Appellant also told Martinez that
the white men approached him to fight, but appellant backed off. 
          Appellant testified at trial that, after arriving at the club, he had one drink, left
Martinez at the table, and walked outside to answer his cell phone. He then went to
Martinez’s car to retrieve cigarettes and noticed people arguing as he walked back
toward the club. Appellant testified that Gurie and Naill approached him. Appellant
backed up and headed for the club as Naill and Gurie headed for their jeep. He then
heard “burning rubber” from the jeep. Appellant testified that, when he came near the
valet area, he heard gunshots and jumped down between a row of parked cars. After
the shooting ended, he ran inside the club and told Martinez that there was shooting
outside. Appellant later told Martinez that some white men had started something
and that he thought they were the source of the shooting. 
          Naill died as the result of a gunshot wound to the back of the head. 
Sufficiency
          In his sole point of error, appellant argues that the evidence is factually
insufficient regarding his identity as the man who shot Naill. When reviewing the
factual sufficiency of the evidence, we view the evidence in the light most favorable
to the verdict. Clewis v. State, 922 S.W.2d 126, 134 (Tex. Crim. App. 1996). An
appellate court will set aside a verdict if, after viewing all of the evidence, both for
and against the verdict: (1) the evidence is so weak as to be clearly wrong and
manifestly unjust, or (2) the finding, although adequate if taken alone, is against the
great weight and preponderance of the available evidence. Swearingen v. State, 101
S.W.3d 89, 102 (Tex. Crim. App. 2003). We may not substitute our judgment for
that of the fact finder. Cedano v. State, 24 S.W.3d 406, 411–12 (Tex. App.—Houston
[1st Dist.] 2000, no pet.). 
          Appellant argues that, because Deimart, one of the cab drivers, could not
identify appellant from the photographic array, Deimart’s testimony was factually
insufficient to sustain his conviction. The fact that a witness cannot be certain of a
defendant’s identification goes to the weight of the testimony; therefore, the lack of
a positive identification is a jury issue. Valenciano v. State, 511 S.W.2d 297, 299
(Tex. Crim. App. 1974). 
          Deimart viewed a photographic array containing a photograph of appellant and
photographs of five other men with similar characteristics. Deimart was able to
eliminate four of the other men as suspects. He testified that he could not choose
between appellant and the remaining man because the assailant, at the scene, wore a
hat. Also, he could not see the whole body and the height in the photographic array
and had to focus only on facial features. Although Deimart could not identify
appellant in the photographic array, he positively identified appellant at trial as the
shooter, and he had no doubt that the shooter was the same person who had argued
with Gurie and Naill. We reserve Deimart’s credibility as a matter for the jury. See
Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).
          Numerous trial witnesses identified appellant based on what they saw at the
crime scene. The jury may believe or disbelieve all or any part of a witness’s
testimony. Chiles v. State, 988 S.W.2d 411, 415 (Tex. App.—Houston [1st Dist.]
1999, pet. ref’d). We must defer to the jury’s findings and may find the evidence
factually insufficient only where necessary to prevent manifest injustice. Cain, 958
S.W.2d at 407.
          Further, several witnesses identified appellant, in a photographic array and at
trial, based on his baggy clothing, height, and race. As appellant admitted, and the
undisputed evidence revealed, immediately before the shooting, appellant had been
involved in a confrontation with Naill and Gurie. Also, the evidence revealed that,
following the confrontation, gunshots were fired, and appellant was still in the
parking lot. Several witnesses testified that, after the gunshots were fired, appellant
reappeared behind a bus and walked inside the club. Moreover, Winters testified that,
after the shooting, appellant appeared frightened and excited and told Martinez they
had to leave. 
          A decision is not manifestly unjust merely because the jury resolved conflicting
views of the evidence in favor of the State. See id. at 410. Viewing all the evidence
on both sides and in a neutral light, we hold that the evidence is factually sufficient
to sustain appellant’s conviction. 
          We overrule appellant’s sole point of error.
 
 
 
                                                   Conclusion
           We affirm the judgment of the trial court.
 

                                                             George C. Hanks, Jr.
                                                             Justice

Panel consists of Justices Taft, Jennings, and Hanks.
Do not publish. Tex. R. App. P. 47.4.