Opinion issued December 15, 2005



     











In The
Court of Appeals
For The
First District of Texas




NO. 01-05-00066-CR




LUIS GONZALES, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 184th District Court
Harris County, Texas
Trial Court Cause No. 1007512




O P I N I O N

          Appellant was charged by indictment with capital murder for kidnapping and
murdering his ex-wife, Maria Villatoro. Tex. Pen. Code Ann. § 19.03 (Vernon
Supp. 2005). After a plea of not guilty, the jury found appellant guilty and assessed
punishment at life in prison. On appeal, appellant argues that (1) appellant’s
confession was inadmissible because it did not comply with Texas law, (2) the corpus
delicti of kidnapping was not sufficiently established to support a charge of capital
murder, (3) the evidence was legally and factually insufficient to support conviction,
(4) the trial court erred in allowing hearsay testimony, and (5) certain evidence should
not have been admitted because it was improperly obtained by a warrantless search.
          We affirm.
BACKGROUND
           Appellant and Villatoro were married and had two daughters together. 
Appellant became abusive to Villatoro and their daughters. Eventually, Villatoro left
appellant and had him arrested on assault charges. Villatoro divorced appellant, later
met another man, and remarried. She made efforts to avoid appellant and to prevent
him from knowing where she was.
          Appellant became upset about Villatoro’s new marriage and began searching
the city, hoping to find out where they lived. Appellant finally located the daycare
for his two daughters. On July 31, 2003, appellant waited outside the daycare for
Villatoro to arrive. After Villatoro picked up her daughters, appellant forced his way
into Villatoro’s car, showed her a handgun, and told her to drive off. Appellant spent
between two and three hours in the car with Villatoro and her daughters, arguing with
her, telling her where to drive, and looking for an isolated place to kill her. 
Eventually, appellant led her to a remote area of Katy, Texas. He shot Villatoro once
while she was in the driver’s seat, moved her to the passenger seat, and then shot her
two more times.
          At 7:30 that night, appellant called his brother, Andres Gonzales, and told
Andres to meet him at a parking lot in Katy. Andres drove appellant’s car to the
location. There he saw appellant in Villatoro’s car with a dead body in the passenger
seat. Andres followed appellant to an isolated construction site, where appellant
moved the girls into his car and left with his brother, leaving Villatoro’s body in her
car.
          After dropping Andres off, appellant drove with his daughters to Mesquite,
Texas. He pulled into a parking lot near a Greyhound bus station and purchased
tickets to Santa Barbara, California.
          Meanwhile, a worker at the construction site found Villatoro’s body and
contacted police. Based on their initial investigation, appellant became an immediate
suspect and an Amber Alert was issued notifying the public that the daughters were
missing. A man who had been at the Greyhound bus station in Mesquite learned
about the Amber Alert and told police that he had seen appellant. Upon verifying
appellant’s destination, Houston authorities notified the Santa Barbara Police
Department.
          The Santa Barbara police arrested appellant as the bus came into the station. 
At the police station, he was read his Miranda rights. Appellant submitted to
interrogation and eventually confessed to the murder. During this time, Mesquite
police impounded appellant’s car and, under instruction from Houston police,
retrieved the handgun used in the shooting.
Custodial Confession
          For his fourth point of error, appellant argues that his confession was
erroneously admitted because it did not comply with Texas law.
A.     Standard of Review
          We review a trial court’s ruling on a motion to suppress for an abuse of
discretion. Balentine v. State, 71 S.W.3d 763, 768 (Tex. Crim. App. 2002).
          Applying this standard, we afford deference to the trial court’s determination
of the historical facts but decide de novo whether the trial court erred by misapplying
the law to the facts. See Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). 
If no fact findings are filed, we presume that the trial court made implicit findings of
fact that support its ruling, provided these facts are supported by the record. See
Carmouche v. State, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000). We review de
novo application-of-law-to-fact questions that do not turn on an evaluation of
credibility and demeanor. See Guzman, 955 S.W.2d at 89.
          Article 38.22 of the Texas Code of Criminal Procedure controls the
admissibility of custodial confessions in a criminal trial. Tex. Code Crim. Proc.
Ann. art. 38.22 (Vernon 2005). In this case, whether the requirements of article
38.22 were satisfied is an application-of-law-to-fact question. Cf. Vann v. State, 93
S.W.3d 182, 184 (Tex. App.—Houston [14th Dist.] 2002, pet. ref’d) (applying de
novo review to question of compliance with Tex. Fam. Code Ann. § 52.02(b)). In
making this determination, we will view the evidence at the suppression hearing in
the light most favorable to the trial court’s ruling and review de novo the trial court’s
resolution of the question. See id.
B.      Analysis
          After the police arrested appellant at the bus station in Santa Barbara, they took
him into custody. Detective Velasco of the Santa Barbara Police Department read
appellant his rights and proceeded to interrogate him. The interrogation was recorded
on video and audio tape. The trial court admitted these tapes into evidence over
appellant’s objection.
          Appellant argues that the interrogation violated the requirements of Texas
Code of Criminal Procedure article 38.22, making the interrogation inadmissible at
trial.


 Section 3 of the article prescribes the requirements to make oral custodial
statements admissible at trial and, among other things, codifies the Miranda warnings
required to be given prior to custodial confessions. Tex. Code Crim. Proc. Ann. art.
38.22 § 3(a); Miranda v. Arizona, 384 U.S. 436, 479, 86 S. Ct. 1602, 1630 (1966). 
However, section 3 requires a fifth warning not explicitly required under Miranda,
namely that the accused “has the right to terminate the interview at any time.” Tex.
Code Crim. Proc. Ann. art 38.22, §§ 2(a), 3(a)(1)(2). The Miranda warnings that
appellant received in California did not contain this fifth warning, and appellant
argues that this rendered the statements inadmissible for his trial.
          Appellant, however, ignores section 8 of article 38.22 in making his argument. 
Section 8 provides that a statement obtained in another state in compliance with the
laws of that state is admissible. Tex. Code Crim. Proc. Ann. art. 38.22 § 8(1). 
California does not have a statute similar to Texas Code of Criminal Procedure article
38.22. Instead, they directly observe the requirements set out by the United States
Supreme Court in Miranda. 384 U.S. at 479, 86 S. Ct. at 1630; People v. Gurule, 123
Cal. Rptr. 2d 345, 381–82 (Cal. 2002).
          During the hearing on the Motion to Suppress Oral Statements, the State
offered the Gurule case to the court to establish California law on obtaining custodial
confessions. The State also received testimony from Detective Velasco stating that
the warnings that he gave to appellant prior to the interrogation were in compliance
with California law. Detective Velasco also read at the hearing the warnings he read
to appellant in English and in Spanish. These warnings tracked the language of
Miranda. Appellant did not object to the evidence of California law, nor did he offer
any contradicting evidence. Therefore, the State met its burden in showing that the
requirements of article 38.22 had been met.
          We hold that the trial court did not abuse its discretion in admitting appellant’s
oral statement into evidence. Appellant’s fourth point of error is overruled.
Kidnapping Corpus Delicti
          For his third point of error, appellant argues that the State failed to establish the
corpus delicti of capital murder independent of the appellant’s extra-judicial
admission. If a defendant is charged with capital murder based on Texas Penal Code
subsection 19.03(a)(2), as in the present case, the corpus delicti of capital murder
consists of the corpus delicti of murder and the underlying offense. Gribble v. State,
808 S.W.2d 65, 71 (Tex. Crim. App. 1990). In appellant’s brief, however, he
admitted that the corpus delicti of murder was established at trial. Therefore, we only
consider whether the State sufficiently established the corpus delicti of the underlying
offense of kidnapping.
A.      Standard of Review
          A criminal conviction cannot be based upon a defendant’s extrajudicial
confession unless the confession is corroborated by independent evidence tending to
establish the corpus delicti. Id. at 70. Texas defines corpus delicti as harm brought
about by the criminal conduct of some person. Id. Therefore, we must review the
evidence to determine whether there is some corroboration of an injury or loss and
a criminal agent, though the independent evidence does not have to identify the
defendant as the culprit. Salazar v. State, 86 S.W.3d 640, 644 (Tex. Crim. App.
2002). The corroborating evidence need not prove the underlying offense
conclusively; there simply must be some evidence which renders the commission of
the offense more probable than it would be without the evidence. Cardenas v. State,
30 S.W.3d 384, 390 (Tex. Crim. App. 2000); Chiles v. State, 988 S.W.2d 411, 414
(Tex. App.—Houston [1st Dist.] 1999, pet. ref’d).
B.      Analysis
          On the day she was murdered, Villatoro picked up her two daughters from day
care at 4:25 in the afternoon. While she was expected to return home, she never did. 
The next morning, her body was found at a construction site. Though the
construction site was not near the daycare or her home, this alone is not sufficient to
establish the corpus delicti of kidnapping, because it does not suggest that she was
alive when she was moved. Gribble, 808 S.W.2d at 72.
          Appellant’s brother, Andres Gonzales testified that he met appellant after 7:30
that evening, and Villatoro was dead in the car at that time. The evidence at trial
showed that she was killed in the car. This means that either appellant murdered
Villatoro immediately at the daycare and then drove around for three hours with a
dead body and two upset children in his car, or that he transported her alive before
killing her. Because of the risks created by carrying a dead body and two upset
children through public streets, it is more probable that appellant transported
Villatoro alive before killing her at another location.
          Next we must address whether it was more probable than not that Villatoro
went with appellant against her will. The record shows that before Villatoro left
appellant, he had abused her. She subsequently had him arrested for abuse. After
leaving him, she did not notify appellant of her new whereabouts, and tried to prevent
appellant from learning where she was. This evidence reflects Villatoro’s
unwillingness to have any contact with appellant. The natural inference from this is
that she would not have willingly driven around for three hours with appellant
without contacting her family and letting them know where she was.
          We hold that a rational trier of fact could have found that there was some
evidence to corroborate appellant’s confession of kidnapping. Appellant’s third point
of error is overruled.
Legal and Factual Sufficiency
          For his first and second points of error, appellant argues that the evidence was
legally and factually insufficient to support conviction. Again, appellant concedes
that the evidence was sufficient to support murder. However, appellant argues that
the evidence was insufficient to prove kidnapping to support the charge of capital
murder. 
A.      Standards of Review
          A legal-sufficiency challenge requires us to determine whether, after viewing
the evidence in the light most favorable to the verdict, any rational trier of fact could
have found the essential elements of the offense beyond a reasonable doubt. Johnson
v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000); Howley v. State, 943 S.W.2d 152,
155 (Tex. App.—Houston [1st Dist.] 1997, no pet.). Although our analysis considers
all of the evidence presented at trial, we may not re-weigh the evidence and substitute
our judgment for that of the fact finder. King v. State, 29 S.W.3d 556, 562 (Tex.
Crim. App. 2000).
          In a factual-sufficiency review, we view all of the evidence in a neutral light,
and we will set the verdict aside only if the evidence is so weak that the verdict is
clearly wrong and manifestly unjust, or the contrary evidence is so strong that the
standard of proof beyond a reasonable doubt could not have been met. Escamilla v.
State, 143 S.W.3d 814, 817 (Tex. Crim. App. 2004) (citing Zuniga v. State, 144
S.W.3d 477, 481 (Tex. Crim. App. 2004)). Our evaluation may not intrude upon the
fact-finder’s role as the sole judge of the weight and credibility accorded any
witness’s testimony. Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997). 
The fact-finder alone determines what weight to place on contradictory testimonial
evidence, as it depends on the fact-finder’s evaluation of credibility and demeanor. 
Id. at 408–09. In conducting a factual-sufficiency review, we must discuss the
evidence that, according to appellant, most undermines the jury’s verdict. See Sims
v. State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).
B.      Analysis
          Appellant presents essentially the same argument for both the legal and the
factual sufficiency challenges. He argues that he did not intend to kidnap Villatoro;
instead, he was intended to murder her and they drove around looking for a secluded
place where he could carry out this original goal. This, appellant states without citing
authority, “is not an abduction per se.”


 We find appellant’s argument to be flawed.
          Whether a defendant intends to commit capital murder or a kidnapping is
irrelevant. We look to the defendant’s intent to commit the elements of a crime, not
to the defendant’s intent to commit the named offense. Tex. Pen. Code Ann.
§ 6.02(a) (Vernon 2003). Whether appellant “simply . . . moved his victim so that he
could accomplish his true intent to kill the complainant” is insignificant. What
matters is whether this “byproduct” of the main goal resulted in meeting the elements
of the crime of kidnapping.


 See Santellan v. State, 939 S.W.2d 155, 162 (Tex. Crim.
App. 1997) (holding “a kidnapping becomes a completed offense when (1) a restraint
is accomplished, and (2) there is evidence that the actor had the specific intent to
prevent liberation by secretion or the use or threatened use of deadly force”).
          “A person commits the offense of kidnapping if he intentionally or knowingly
abducts another person.” Tex. Pen. Code Ann. § 20.03 (Vernon 2003). “‘Abduct’
means to restrain a person with intent to prevent his liberation by . . . using or
threatening to use deadly force.” Tex. Pen. Code Ann. § 20.01(2)(B) (Vernon Supp.
2005). “‘Restrain’ means to restrict a person’s movements without consent, so as to
interfere substantially with the person’s liberty, by moving the person from one place
to another or by confining the person. Restraint is ‘without consent’ if it is
accomplished by force, intimidation, or deception . . . .” Tex. Pen. Code Ann.
§ 20.01(1)(A).
          In his confession to Detective Velasco, appellant admitted that he got into
Villatoro’s car, showed her the gun, and told her, “Start, start the car and let’s go.” 
As they drove around, she repeatedly asked him to let her go. Appellant refused and
instructed her to drive to an isolated area of Katy, Texas, where he killed her. With
her children in the back seat and appellant bearing a gun in the passenger seat,
Villatoro was restrained from leaving the car. She asked repeatedly to be let go,
showing the restraint was without consent. By bearing the gun and refusing to let
Villatoro go, appellant showed an intent to restrain Villatoro by threatening to use
deadly force. These actions show he acted intentionally.
          We hold that a rational trier of fact could have found the essential elements of
the offense beyond a reasonable doubt. Appellant’s first point of error is overruled.
          During the trial, appellant did not present any witnesses of his own to offer
contrary evidence. Appellant’s confession to Detective Velasco was largely
uncontradicted. Accordingly, we hold that the evidence was not too weak, nor was
the contrary evidence too strong, to support a finding of proof beyond a reasonable
doubt.
          Appellant’s second point of error is overruled.
Hearsay
          In his fifth point of error, appellant argues that the trial court erred in admitting
out of court statements testified to by Villatoro’s mother.
A.      Standard of Review
          We review the trial court’s admission of testimony under an abuse of discretion
standard. Salazar v. State, 38 S.W.3d 141, 153 (Tex. Crim. App. 2001). We will
uphold the trial court’s decision unless it lies outside the “zone of reasonable
disagreement.” Id. at 153–54.
B.      Analysis
          Appellant complains of certain testimony from Villatoro’s mother. After
appellant had asked her if the children were “getting along fine,” she indicated that
they were. The State, on redirect, asked Villatoro’s what Michelle, one of the
daughters, remembered about the death of her mother. She testified that Michelle told
her that she saw appellant cover Villatoro’s mouth and hit her repeatedly. Michelle
then formed her hand in the shape of a gun and said “boom, boom.” She also recalled
seeing her mother bleed a lot through her nose. Appellant argues that these
statements were inadmissible hearsay. The State argues that the statements were not
hearsay because they were not offered to prove the truth of the matter asserted.
          Hearsay is “a statement, other than one made by the declarant while testifying
at trial or hearing, offered in evidence to prove the truth of the matter asserted.” Tex.
R. Evid. 801(d). An extrajudicial statement or writing that is offered for the purpose
of showing what was said, rather than for proving the truth of the matter stated
therein, does not constitute hearsay. Dinkins v. State, 894 S.W.2d 330, 347 (Tex.
Crim. App. 1995); Ellis v. State, 99 S.W.3d 783, 788 (Tex. App.—Houston [1st Dist.]
2003, pet. ref’d).
          The State offered the testimony to rebut appellant’s questioning whether the
children were “getting along fine.” For this purpose, what mattered was what
Michelle said, not whether the matter asserted was true. Villatoro’s mother’s
testimony was not hearsay, and therefore the trial court did not abuse its discretion
in overruling appellant’s objection.
          Appellant’s fifth point of error is overruled.
Warrantless Search
          In his sixth point of error, appellant argues that the trial court erred in denying
his motion to suppress the gun seized as a result of an unlawful search of the trunk
of his car.
A.      Standard of Review
          A trial court’s ruling on a motion to suppress evidence will not be set aside
unless an abuse of discretion is found. Villarreal v. State, 935 S.W.2d 134, 138 (Tex.
Crim. App. 1996); State v. Derrow, 981 S.W.2d 776, 778 (Tex. App.—Houston [1st
Dist.] 1998, pet. ref’d). In reviewing the trial court’s ruling, we apply a bifurcated
standard of review. Carmouche, 10 S.W.3d at 327. We give almost total deference
to the trial court’s determination of the historical facts. Id. The trial court is the
exclusive finder of fact in a motion to suppress hearing, and it may choose to believe
or disbelieve any or all of any witness’s testimony. State v. Ross, 32 S.W.3d 853, 855
(Tex. Crim. App. 2000). However, if the trial court is called upon to apply the law
to the facts, and the ultimate resolution of the issue does not turn on an evaluation of
the credibility and demeanor of a witness, we review that issue de novo. Guzman,
955 S.W.2d at 89.
B.      Analysis
          While appellant was en route to Santa Barbara, California, Mesquite police
impounded his car left near the bus station. While it was at the impound lot,
Mesquite police received instruction from Houston police to search the trunk of the
vehicle. Officer William Sipes pried the trunk open and inside it he found the gun
used to kill Villatoro. At trial, the court held a hearing on whether the evidence was
obtained under an unlawful search and should be suppressed. After hearing all the
evidence, the trial court ruled that the search was lawful because the vehicle had been
abandoned and denied the motion to suppress.
          The Fourth Amendment to the United States Constitution protects the “right
of the people to be secure in their persons, houses, papers, and effects, against
unreasonable searches and seizures.” U.S. Const. amend. IV. The United States
Supreme Court has held that the Fourth Amendment generally imposes a warrant
requirement for searches. Katz v. United States, 389 U.S. 347, 357, 88 S. Ct. 507,
514 (1967); see also Johnson v. United States, 333 U.S. 10, 13–14, 68 S. Ct. 367, 369
(1948). “A ‘search’ occurs when the government violates a subjective expectation
of privacy that society considers objectively reasonable.” Dawson v. State, 106
S.W.3d 388, 391 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (citing Kyllo v.
United States, 533 U.S. 27, 33, 121 S. Ct. 2038, 2042–43 (2001)). Warrantless
searches are “per se unreasonable under the Fourth Amendment subject only to a few
specifically established and well-delineated exceptions.” Katz, 389 U.S. at 357, 88
S. Ct. at 514.
          The State argues that appellant abandoned the vehicle and, thus, lacks standing
to assert Fourth Amendment rights regarding the vehicle. If a defendant abandons
property, he lacks standing to raise Fourth Amendment rights over it at trial. 
Swearingen v. State, 101 S.W.3d 89, 101 (Tex. Crim. App. 2003); Barron v. State 671
S.W.2d 553, 555–56 (Tex. App.—Houston [14th Dist.] 1984, pet. ref’d) (holding
Fourth Amendment protection terminated when defendant left car unoccupied, in
ditch area with two doors open).
          When police take custody of abandoned property, no seizure occurs under the
Fourth Amendment. Swearingen, 101 S.W.3d at 101. Property is abandoned if (1)
the defendant intends to abandon the property and (2) his decision to abandon the
property was not due to police misconduct. McDuff v. State, 939 S.W.2d 607, 616
(Tex. Crim. App. 1997) (holding automobile abandoned when left in motel parking
lot for six days and defendant went to another state). 
          Appellant does not argue that any potential police misconduct lead to his
alleged abandonment of the property. Our analysis of abandonment therefore turns
on whether appellant intended to abandon the property. The McDuff court explained
as follows:
[A]bandonment is primarily a question of intent to be inferred from the words
spoken, acts done, and other objective facts and relevant circumstances, with
the issue not being in the strict property-right sense, but rather whether the
accused had voluntarily discarded, left behind, or otherwise relinquished his
interest in the property so that he could no longer retain a reasonable
expectation of privacy with regard to it at the time of the search.

Id. 
          After the murder, appellant drove his car from Houston, Texas to Mesquite,
Texas. He drove into a parking lot near the Greyhound bus station. He parked his
car at the edge of the parking lot. He did not park in a parking space and one tire
hung over a curb leading onto another parking lot. Heading to the bus station,
appellant left one car door open and left items from inside the car—such as cassettes
and a child safety seat—scattered near the car. At the bus station, appellant bought
a one-way ticket to Santa Barbara, California.
          Considering these facts in their entirety, we hold that the trial court did not
abuse its discretion finding that the car had been abandoned and in overruling
appellant’s motion to suppress. Because appellant abandoned his car, he lacked
standing to claim any Fourth Amendment rights at trial. Swearingen, 101 S.W.3d at
101. We hold that the trial court did not abuse its discretion in denying appellant’s
motion to suppress.
          Appellant’s sixth point of error is overruled.
Conclusion
          We affirm the judgment of the trial court.
 
                                                                        Laura Carter Higley
                                                                        Justice

Panel consists of Justices Nuchia, Jennings, and Higley.

Publish. See Tex. R. App. P. 47.2(b).