Affirmed and Memorandum Opinion
filed December 15, 2009

 

In
The

Fourteenth
Court of Appeals



NO. 14-08-00460-CR



Dante BeRnard
Knight, Appellant 

v.

The State of
Texas, Appellee 



On Appeal from
the 262nd District Court

Harris County, Texas

Trial Court
Cause No. 1163116



 

M E M O R A N D U M    O P I N I O N

            A jury found
appellant, Dante Bernard Knight, guilty of the felony offense of robbery.  See
Tex. Penal Code Ann. § 29.02 (Vernon 2009).  The jury assessed punishment
at forty-eight years’ confinement in the Texas Department of Criminal Justice,
Institutional Division.  In four issues, appellant argues that (1) the evidence
identifying him is factually insufficient; (2) the trial court erred in
admitting evidence of an extraneous offense under Texas Rule of Evidence 403;
(3) the trial court erred in admitting evidence of an extraneous offense under
Texas Rule of Evidence 404(b); and (4) the trial court erred in refusing to
give the requested limiting instruction to the jury with regard to the
extraneous offense evidence.  We affirm.  

 

                                 Factual
and Procedural Background

            At approximately 1
p.m. on November 26, 2007, the complainant was returning from the bank to the
convenience store where he worked.  The complainant was carrying a bank bag
containing receipts and keys belonging to the convenience store’s business.  The
complainant stopped in the parking lot of the convenience store to help a woman
attempting to use a pay phone.  As the complainant spoke with the woman, he
briefly noticed an African-American male crossing the street towards the
convenience store.  Seconds later, appellant pushed the complainant to the
ground and struck him on the back of the head.   Appellant attempted to grab
the bank bag out of the complainant’s hands.  The complainant refused to let go
of the bank bag, but eventually appellant pried it from the complainant’s
grip.  Appellant ran from the scene while the complainant pulled himself
together, got into his vehicle, and chased after appellant.  After running for
approximately a quarter of a mile, appellant jumped into the passenger side of
a sport utility vehicle that was waiting, engine running, with a get-away-driver. 
The complainant followed the sport utility vehicle until he was unable to keep
up with the vehicle’s erratic driving.  The complainant memorized the sport
utility vehicle’s license plate number and called the police when he returned
to the convenience store.  

            The next day,
Houston Police Officer Kerry Richards was on patrol in an unmarked car and
noticed appellant outside working on a sport utility vehicle within an
apartment complex.  Officer Richards ran the license plate number through his
in-car database and discovered that the vehicle was listed as suspicious. 
Officer Richards called for police units in marked cars to station themselves
outside the apartment complex.  When appellant left the complex in the sport
utility vehicle, Houston Police Officer Raymond Abel pulled appellant over for
a traffic violation.  Officer Abel was aware appellant may have been involved
in a robbery and took him into custody.

            Officer Abel
transported appellant to the police station where Houston Police Officer
Colleen Guidry put together a line-up including appellant.  Officer Guidry
called the complainant to the police station to see whether he could identify
anyone in the line-up.  Next, she took the complainant into the line-up room
where he immediately picked out appellant as the man who robbed him outside the
convenience store.  Although the complainant stated he was certain that
appellant was the perpetrator, he was reluctant to state that his
identification was positive.  The complainant told Officer Guidry that he was
“a good man” and did not want to misidentify someone.  However, he also told
Officer Guidry that appellant had the same eyes, face, and other identifying
features as the person who robbed him.  Officer Guidry testified that in her opinion
the complainant’s identification of appellant was positive, but that she only
recorded the identification as tentative because the complainant would not
state he was positive.  On cross-examination of Officer Guidry, defense counsel
further questioned Officer Guidry about the tentative identification. 
Appellant was arrested and charged with the felony offense of robbery.

            During trial, the
complainant testified he was certain appellant was the perpetrator, however he
could only be 99% positive and the rest was up to God.  On cross-examination,
defense counsel repeatedly asked the complainant how well he saw the person who
robbed him.  Counsel went into detail on whether the complainant could remember
exactly what the robber was wearing.  Counsel also questioned the complainant
about his inability to make a 100% identification.  

            Additionally, the
State introduced evidence that appellant had previously been convicted of theft
from a person.  The victim of the previous offense, Gary Cunningham, testified
about the theft.  Cunningham told the jury that at approximately four in the
afternoon he was returning from the bank to the restaurant that he managed,
when appellant grabbed the bank bag he was carrying from his hands.  Cunningham
testified appellant fled on foot and then jumped into the passenger-side of a
waiting get-away-vehicle.  Shortly after stealing the bank bag from Cunningham,
police arrested appellant at a nearby mall.  Appellant objected to the
introduction of the evidence, but was overruled.  The trial court found that
the defense had placed appellant’s identity in issue during cross-examination
and therefore the extraneous offense evidence was admissible to prove
appellant’s identity.     

            The jury found
appellant guilty of the felony offense of robbery and, after finding two
enhancement paragraphs to be true, assessed punishment at forty-eight years’
confinement.  Appellant timely filed this appeal.    

Discussion

I.         Is the evidence
supporting the identification of appellant factually           sufficient?

            In his first
issue, appellant argues the evidence supporting the complainant’s
identification of appellant as the perpetrator is factually insufficient.[1] 
Specifically, appellant points to the fact the complainant said he was only 99%
certain in his identification of appellant as the person who robbed him.  

            A.        Standard
of Review

            In a factual
sufficiency review, we consider all the evidence in a neutral light.  Prible
v. State, 175 S.W.3d 724, 730–31 (Tex. Crim. App. 2005).  The evidence may
be factually insufficient in two ways.  Id. at 731.  First, when
considered by itself, the evidence supporting the verdict may be so weak that
the verdict is clearly wrong and manifestly unjust.  Id.  Second, where
the evidence both supports and contradicts the verdict, the contrary evidence
may be strong enough that the beyond-a-reasonable doubt standard could not have
been met.  Id.  In conducting a factual sufficiency review, we must
employ appropriate deference so we do not substitute our judgment for that of
the fact finder.  Jones v. State, 944 S.W.2d 642, 648 (Tex. Crim. App.
1996).  Our analysis must consider the evidence appellant claims is most
important in allegedly undermining the jury’s verdict.  Sims v. State,
99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

            B.        Analysis


            Appellant
relies on Johnson v. State for his assertion that the evidence
identifying him is factually insufficient.  Johnson v. State, 23 S.W.3d
1, 8 (Tex. Crim. App. 2000).  Appellant’s reliance on this case is misplaced. 
In Johnson, an aggravated sexual assault case, the victim testified that
she was positive defendant Johnson was her assailant, but she was not 100%
positive.  Id at 5.  The reasons the victim was not 100% positive
defendant Johnson was her assailant were (1) because it was dark; (2) she had
been blindfolded; (3) the assailant wore a ski-mask the majority of the time;
(4) she was scared; and (5) she was never able to get a good look at the
assailant.  Id.  The reason the victim felt she was positive about her
identification was based on a similarity in the defendant Johnson’s eyes.  Id. 
The Johnson victim’s inability to make a 100% positive identification is
what appellant contends likens Johnson to the case at bar.  The facts
surrounding the identification of the perpetrator in Johnson and those
in the case at hand are distinguishable.

            In the instant case,
the complainant was attacked at approximately one in the afternoon.  The attack
was outside in broad daylight, there is testimony that customers at the gas
station across the street watched the attack.  The complainant noticed
appellant walking across the street before appellant attacked him.  The
complainant was able to give police a description of appellant including his
hair style, race, and height.  Appellant focuses on the discussion the
complainant had with Officer Guidry during the line-up procedure.  During this
conversation, the complainant identified appellant as the person who robbed him,
but would not state that he was positive in his identification.  Officer Guidry
testified at trial that the complainant seemed certain in his identification, but
was also particularly concerned that he would make a misidentification. 
Officer Guidry testified that in her opinion, based on her experience of
conducting hundreds of line-ups over an eight year time period, the complainant
was positive in his identification.  The complainant told Officer Guidry that
he recognized appellant’s eyes, ears, face, height and other identifying
features, but the complainant insisted he was afraid of making the wrong
identification.  At trial, the complainant testified that he could be only 99%
sure and the rest was up to God.  A reasonable juror could have believed the
complainant’s inability to make a “100%” identification resulted from his
belief system and that the complainant’s “99%” identification sufficiently
identified appellant as the perpetrator.  It is within the province of the jury
to reconcile the conflicts and contradictions in the evidence.  Chiles v.
State, 988 S.W.2d 411, 415 (Tex. App.—Houston [1st Dist.] 1999, pet.
ref’d).  Viewing all the evidence in a neutral light, we hold it was sufficient
for a reasonable trier of fact to conclude appellant was the person who robbed
the complainant.  

II.        Did the trial
court err in admitting evidence of an extraneous offense under     Texas Rules
of Evidence 403 and 404(b)?

            Appellant contends
the trial court erred in admitting evidence that appellant had previously been
convicted of theft from a person.  Appellant claims the prejudicial effect of
this evidence substantially outweighs its probative value under rule 403 of the
Texas Rules of Evidence.  Additionally, appellant argues evidence of his prior
conviction is not admissible under rule 404(b) of the Texas Rules of Evidence
because the prior conviction is not similar enough to the current charge to
render it a “signature crime.”  

            A.        Standard
of Review

            Extraneous offense
evidence is admissible if it is relevant to a fact of consequence in the case,
and the probative value of the evidence is not substantially outweighed by
unfair prejudice.  Martin v. State, 173 S.W.3d 463, 467 (Tex. Crim. App.
2005).  Evidence is relevant if it has “any tendency to make the existence of
any fact that is of consequence to the determination of the action more
probable or less probable than it would be without the evidence.” Tex. R. Evid.
401.  Evidence of “other crimes, wrongs or acts is not admissible to prove the
character of a person in order to show action in conformity therewith.”  Tex.
R. Evid. 404(b).  Character conformity evidence that has no relevance beyond a
tendency to show the defendant is a bad person or of a character from whom
criminal conduct might be expected is inadmissible.  Casey v. State, 215
S.W.3d 870, 879 (Tex. Crim. App. 2007).  However, evidence of extraneous
crimes, wrongs or acts is admissible under rule 404(b) if it tends in logic and
common experience to serve some purpose other than character conformity to make
the existence of a fact of consequence more or less probable than it would be
without the evidence.  Montgomery v. State, 810 S.W.2d 372, 287 (Tex.
Crim. App. 1990) (op. on reh’g).  Rule 404(b) also provides that extraneous
offense evidence may “be admissible for other purposes, such as proof of
motive, opportunity, intent, preparation, plan, knowledge, identity, or absence
of mistake or accident.”  Tex. R. Evid. 404(b).  This list is illustrative
rather than exhaustive.  Johnston v. State, 145 S.W.3d 215, 219 (Tex.
Crim. App. 2004).  Extraneous offense evidence may also be admissible to rebut
a defensive theory.  Moses v. State, 105 S.W.3d 622, 626 (Tex. Crim.
App. 2003).

            If a trial court
determines that extraneous misconduct evidence is not barred under rule 404(b),
it may still be inadmissible under rule 403.  Relevant evidence is properly
excluded under rule 403 when its probative value is substantially outweighed by
the danger of unfair prejudice.  Tex. R. Evid. 403.  Courts should balance the
following factors under a rule 403 analysis: (1) the strength of the evidence
in making a fact more or less probable; (2) the potential of the extraneous
offense evidence to impress the jury in some irrational but indelible way; (3)
the amount of time the proponent needed to develop the evidence, during which
the jury will be distracted from consideration of the indicted offense; and (4)
the strength of the proponent’s need for this evidence to prove a fact of
consequence.  Mozon v. State, 991 S.W.2d 841, 847 (Tex. Crim. App.
1999).

            Whether extraneous
offense evidence has relevance apart from character conformity is a question
for the trial court.  Montgomery, 810 S.W.2d at 391.  The trial court
must conclude that the evidence tends in logic and common experience to serve
some purpose other than character conformity to make the existence of a fact of
consequence more or less probable than it would be without the evidence.  Id. 
We review the trial court’s ruling under an abuse of discretion standard and
will not disturb the ruling if it is within the zone of reasonable
disagreement.  Powell v. State, 63 S.W.3d 435, 438 (Tex. Crim. App.
2001).   

            B.        Rule
404(b)

            One of the main
rationales for admitting extraneous offense evidence is to prove the identity
of the offender.  Segundo v. State, 270 S.W.3d 79, 88 (Tex. Crim. App.
2008).  Here, the theory of relevancy is usually that of modus operandi
in which the pattern and characteristics of the charged crime and the
extraneous offense evidence are so distinctively similar that they constitute a
“signature.”  Id.   No rigid rules dictate what constitutes sufficient
similarities; rather, the common characteristics may be proximity in time and
place, mode of commission of the crimes, the person’s dress, or any other
elements which mark both crimes as having been committed by the same person.  Id. 
But if the similarities are “generic,” i.e. typical of the crime, they will not
constitute a “signature crime.”  Id.  

            Appellant concedes
he placed identity in issue during his cross-examination of the complainant and
Officer Guidry.  See Page v. State, 137 S.W.3d 75, 78 (Tex. Crim. App.
2004) (identity can be raised by the defense on cross-examination when the
identifying witness is impeached on a material detail of the identification). 
Because identity was placed in issue, we must compare the circumstances of the
charged offense and the extraneous offense to determine if they are
sufficiently similar to make the extraneous offense relevant to the issue of
identity.  See id at 336.  On June 18, 2002, the appellant was convicted
of theft from a person.  In that case, appellant stole a bank bag from a
restaurant manager as the manager was returning from the bank and entering his
restaurant sometime in the afternoon.  After taking the bank bag, appellant
fled on foot to a vehicle waiting nearby with his get-away-driver ready to go. 
Appellant contends these crimes are not “so idiosyncratic and unusual as to
signal them conclusively to be the handiwork of the same person.”  Owens
v. State, 827 S.W.2d 911, 915 (Tex. Crim. App. 1992).  

            The State concedes
the five year time gap between the offenses is lengthy; however, this is not
dispositive of our inquiry.[2] 
See Lane v. State, 933 S.W.2d 504, 519 (Tex. Crim. App. 1996).  The
Court of Criminal Appeals has held that extraneous offenses may be sufficiently
similar to prove identity when there is either proximity in time and place or
a common mode of commission.  Ransom v. State, 503 S.W.2d 810, 813 (Tex.
Crim. App. 1974).  A comparison between the charged offense and the extraneous
offense shows a high degree of similarity.  Both offenses were committed during
the day, shortly after the complainants had left a bank.  Both the complainants
were within footsteps of their places of work with bank bags in hand. 
Appellant did not make demands from either complainant and with a clear goal in
mind he specifically targeted the bank bags.  After each offense, appellant
fled on foot to a get-away-vehicle with a driver.  

            Appellant contends
the use of force in the current charge distinguishes it from the extraneous
offense.  However, in the current charge the complainant resisted appellant;
while in the extraneous offense the complainant let go of the bank bag and did
not struggle with appellant.  Even so, some dissimilarity between the charged
crime and the extraneous offense do not automatically make the extraneous
offense inadmissible.  Dickson v. State, 246 S.W.3d 733, 743 (Tex.
App.—Houston [14th Dist.] 2007, pet. ref’d). We conclude the trial court did
not abuse its discretion in determining that the similarities between the
charged offense and the extraneous offenses are sufficient to show appellant’s
signature style of theft.[3] 
See Burton v. State, 230 S.W.3d 846, 851 (Tex. App.—Houston [14th Dist.]
2007, no pet.).      

            C.        Rule
403

            Rule 403
provides relevant evidence “may be excluded if its probative value is
substantially outweighed by the danger of unfair prejudice.”  Tex. R. Evid.
403.  Appellant argues that even if the extraneous offense was admissible under
Rule 404(b), it should have been excluded as unfairly prejudicial under Rule
403.  Appellant contends the evidence is dangerously prejudicial because it had
the potential to impress the jury in some irrational and indelible way.  Rule
403 does not exclude all prejudicial evidence.  It focuses only on the danger
of “unfair prejudice.”  State v. Mechler, 153 S.W.3d 435, 440 (Tex.
Crim. App. 2005).  “Unfair prejudice” refers only to relevant evidence’s
tendency to tempt the jury into finding guilt on grounds apart from proof of
the offense charged.  Id.  The prejudicial effect may be created by the
tendency of the evidence to prove some adverse fact not properly in issue or
unfairly to excite emotions against the defendant.  The extraneous offense
evidence presented in this case is not inflammatory.  There is nothing
particular about this evidence that could potentially affect the jury in an
emotional way.  Cf. Santellan,
939 S.W.2d at 169 (finding the offense of abuse of a corpse could potentially
affect the jury in an emotional way).  The extraneous offense evidence was
admitted to prove the hotly contested issue of identity.  The testimony offered
to prove the crime was straightforward and was not of the type to cause an
emotional reaction.  The complainant described the chain of the events
surrounding the theft, followed by the arresting officers explaining how they
came to arrest appellant.  There is nothing about this evidence that would have
left an indelible impression on the jurors.  Additionally, the court gave a
limiting instruction to the jury before the extraneous offense evidence was
introduced as well as a limiting instruction in the jury charge.  Accordingly,
we find that the extraneous offense evidence does not have a great potential to
impress the jury in an irrational way and would not tempt the jury into a
finding of guilt on improper grounds. 

            Appellant
also complains the amount of time spent presenting the extraneous offense
evidence weighs in favor of finding it dangerously prejudicial.  On the second
and final day of the guilt/innocence stage of trial, the State introduced the
testimony of four witnesses to develop the extraneous offense.  These were the
only witnesses on the final day of trial.  The extraneous-offense testimony
covers 27 pages of the 133 pages of evidence in the reporter’s record, or,
one-fifth of the testimony in the State’s case in chief.  In Lane v. State,
the Court of Criminal Appeals found the amount of time used to develop an
extraneous offense was not excessive where it comprised less than one-fifth of
the State’s case in chief.  See Lane, 933 S.W.2d at 520.  We hold that
the extraneous offense evidence was unlikely to distract the jury from
considering the charged offense, and thus does not weigh against admitting the
evidence.

            These
were the only factors in the Rule 403 analysis challenged by appellant.  In
light of our resolution above, we hold the trial court did not err in admitting
the extraneous offense evidence.  Accordingly, appellant’s second and third
issues are overruled.  

III.      Did the trial court err in refusing to give a limiting
instruction specifically       on the issue of identity?    

            Appellant
argues the trial court should have given a limiting instruction specifically
instructing the jury to consider the extraneous offense evidence only on the
issue of identity.  Instead, the trial court instructed the jury that it could
consider the extraneous offense as evidence of “motive, opportunity intent,
preparation, plan, knowledge, identity or absence of mistake or accident.” 
Appellant objected to the court’s instruction both when it was given during
trial and when it was included in the jury charge.  In response, the State
argues appellant was not harmed by the trial court’s failure to specifically
instruct the jury on the issue of identity.  Accordingly, we proceed to the
harm analysis and determine whether appellant was harmed by the trial court’s
failure to give the requested instruction. 

            A.        Standard
of Review

            When a timely
objection has been made to a jury charge error at trial, then reversal is
required if there is some harm to the accused from the error.  Almanza v.
State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984).  To determine whether
some harm was suffered, the error is examined in light of the entire jury
charge, the state of the evidence, including the contested issues and weight of
probative evidence, the arguments of counsel and any other relevant information
revealed by the record of the trial as a whole.  Id.  The error is
harmless if it did not contribute to the conviction or punishment.  Stahl v.
State, 749 S.W.2d 826, 831 (Tex. Crim. App. 1988).         

            B.        Did
appellant suffer harm?

            The relevant
portion of the jury charge and oral admonishment to the jury is as follows:

You are instructed in this case regarding the defendant’s
committing an alleged offense or offenses other than the offense alleged
against him in the indictment in this case, you cannot consider such evidence
for any purpose unless you find and believe beyond a reasonable doubt that the
defendant committed such other offense or offenses, if any, and even then you
may only consider the same in determining the motive, opportunity, intent
preparation, plan, knowledge, identity, or absence of mistake or accident of
the defendant, if any, in connection with the offense if any, alleged against
him in the indictment and for no other purpose.  

We must examine the record as a
whole and not focus exclusively on the charge.  Arline v. State, 721
S.W.2d 348, 352 (Tex. Crim. App. 1986).  The complainant’s testimony in this
case is strong.  He was able to describe appellant, give police the license
plate number of the get-away-vehicle, and pick appellant out of a line-up. 
Additionally, police officers found appellant driving and maintaining the
get-away-vehicle described by the complainant.  Furthermore, in assessing harm
we are to look at the error in light of the entire jury charge.  Almanza,
686 S.W.2d at 171.  The jury charge is not devoid of a limiting instruction
altogether.  The jury was instructed to refrain from considering the extraneous
offense evidence for purposes other than those listed in the charge—i.e.
not to consider the evidence for character conformity.  Considering the
extraneous offense evidence for character conformity is precisely the harm
claimed by appellant.  We will not presume the jury disregarded the trial
court’s instruction.  See Colburn v. State, 966 S.W.2d 511, 520 (Tex.
Crim. App. 1998).  The combination of the strong evidence of guilt and the fact
that a limiting instruction was given, shielded appellant from any harm
resulting from the trial court’s refusal to give the requested limiting
instruction.  Accordingly, we overrule appellant’s fourth issue.  

Conclusion

            Having overruled all
of appellant’s issues on appeal, we affirm the judgment of the trial court.  

 

            








                           
                                          

                                                                                    

                                                            /s/        John
S. Anderson

                                                                        Justice

 

 

 

Panel consists of Chief Justice Adele
Hedges, and Justices Anderson, and Mirabal.[4]

Do
Not Publish — Tex. R. App. P. 47.2(b).

 









[1]
As a factual sufficiency review begins with the presumption the evidence
supporting the jury’s verdict is legally sufficient, and since appellant
challenges only the factual sufficiency of the evidence, he effectively
concedes the evidence is legally sufficient to sustain the conviction.  See
Santellan v. State, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997); Clewis
v. State, 922 S.W.2d 126, 134 (Tex. Crim. App. 1996).  





[2]
We note appellant was incarcerated for much of the time between the two
offenses.  Appellant received a sentence of eight years’ confinement for the
extraneous offense.  





[3]
Although appellant is charged with robbery in the current offense, the offense
of robbery includes proof of theft.  See Tex. Penal Code Ann. § 29.02
(Vernon 2009).  





[4]
Senior Justice Margaret G. Mirabal sitting by assignment.