Affirmed and Memorandum Opinion filed January 12, 2010.

 

In The

 

Fourteenth Court of
Appeals

___________________

 

NO. 14-08-01078-CR

___________________

 

Ronnie Ray Dimmer, Appellant

 

V.

 

The State of Texas, Appellee



 



 

On
Appeal from the 176th District Court

Harris County,
Texas



Trial Court Cause No. 1156000

 



 

 

MEMORANDUM OPINION

            A jury found appellant, Ronnie Ray Dimmer, guilty
of murder.  See Tex. Penal Code § 19.02 (Vernon 2009).  The trial court
assessed punishment at twenty-five years’ confinement in the Texas Department
of Criminal Justice, Institutional Division.  In three issues, appellant
challenges the legal and factual sufficiency of the evidence, and the trial
court’s admission of allegedly unduly prejudicial testimony.  We affirm.  

Factual and Procedural Background

            On January 27, 2007, the complainant, Maurice
Anderson, died from a stab wound to his chest.  Appellant was charged with
murdering the complainant and was found guilty by a jury in Harris County. 
Appellant now appeals the jury’s finding.  

I.         The State’s Case in Chief

            A.        Eric Cooper

            The State called Eric Cooper, a friend of
both the complainant and appellant, to testify about the events he witnessed on
the evening of January 27, 2007.  Cooper testified that on that evening he stopped
by appellant’s auto shop to say hello.  When Cooper arrived at the shop, he
found appellant searching for money, which appellant feared had been stolen. 
Appellant, seemingly irritated, told Cooper he believed the complainant had
taken the missing money.  As Cooper and appellant were walking out of the shop,
the complainant happened to have pulled up to the shop on his bicycle.  Appellant
immediately approached the complainant and demanded to know where his money
was.  Cooper explained that after appellant asked the complainant for his money,
he “hit” the complainant in the chest.  Cooper testified that at that point he
could not see what appellant had hit the complainant with.  The complainant
then told Cooper he had been stabbed and Cooper noticed a small steak knife in
appellant’s hand.  The complainant walked across the street to Charles Liquor
store and asked a patron to call an ambulance.  Cooper testified that after the
complainant went across the street to the liquor store, Cooper went straight
home.  

            On cross-examination of Cooper, he testified that
he went home after the incident because he did not think the stab was serious. 
Cooper explained he did not know where the complainant was stabbed or what he
was stabbed with.         

            B.        Marshall Smith

            The State called Marshall Smith to testify
about his interaction with appellant while they were housed in the same jail
unit.  While housed together, Smith and appellant began discussing their
respective charges and attempted to help each other think of ways they could exonerate
themselves.  Smith testified that appellant said he wanted to build a
self-defense case in order to defend against his charges.  Appellant apparently
asked Smith to help him use the jail law library.  Appellant told Smith he had
stabbed the complainant at appellant’s auto shop because appellant believed the
complainant had stolen twenty dollars from him.  Smith testified that appellant
said someone else was at the auto shop at the time of the murder, but appellant
did not give Smith this person’s name.  Appellant allegedly told Smith that
before the complainant arrived at appellant’s shop, appellant was in the back
room getting high on crack cocaine.  Smith testified that appellant told him
that once the complainant arrived, appellant and he got into an argument and
appellant stabbed the complainant in the heart one time and the complainant
fell to the ground.  Appellant allegedly told Smith that after he stabbed the
complainant, he grabbed some of his belongings, got the keys to his van, and took
off.

            Smith testified that appellant’s story made him
angry because Smith had a brother who had been murdered.  Smith was particularly
incensed by appellant’s comment that “dead men can’t talk.”  Smith began
writing letters to the court where appellant’s case was filed.  These letters
eventually made it to the prosecutor who began communicating with Smith about
appellant.  Smith told the jury that he was not receiving anything in return
for testifying against appellant.     

            C.        Dr. Dwayne Wolf

            Dr. Wolf testified that he is the Deputy
Chief Medical Examiner for Harris County.  Dr. Wolf explained to the jury that
after looking at the complainant’s autopsy report, he determined the cause of
death to be from a knife stab to the complainant’s heart.  Dr. Wolf testified
the stab went through the breast bone, through the pericardial sack and penetrated
the heart—approximately four and one half inches.  This type of injury, Dr.
Wolf explained, would not cause immediate death.  Dr. Wolf explained that a
single edged knife caused the injury and that this type of knife is capable of
causing death.  The autopsy report indicated that the complainant did not have
any type of defensive wounds on his body, such as scratch marks, cuts on his
hands and forearms, or bruises from a fight.  

            Dr. Wolf also examined the complainant’s
toxicology report and testified that the complainant had cocaine in his system
at the time of his death.  

                        D.        Julia Salgado

            On the evening complainant was stabbed,
Julia Salgado stopped by Charles Liquor store to buy a six-pack of beer.  As
Salgado pulled into the liquor store’s parking lot, she noticed two men across
the street yelling at each other and running after one another.  One of the men
was bleeding and ran across the street towards Salgado.  At trial, Salgado
identified this man as the complainant.  Once the complainant had reached the
liquor store, he asked for someone to call an ambulance.  Salgado testified
that she watched the other man, whom she later identified in a line-up as
appellant, go into a house across the street and then come back outside with
some clothing and take off in a van.  On cross-examination, Salgado confirmed
that she did not see any one else at the house across the street, other than
the complainant and appellant.

II.        The Defense

            A.        Appellant

            Appellant testified that he had known the
complainant his whole life and their families had been friends.  Appellant said
that on the day the complainant was murdered the complainant had been hanging
around appellant’s shop asking him to loan complainant money.  Appellant asked
the complainant to leave because the complainant had been drinking and was
disturbing appellant’s business.  Sometime later in the day, appellant went into
his shop and discovered money was missing.  Appellant suspected that the
complainant had taken the money.  Appellant asked a customer at the shop
whether he had seen the complainant go inside the shop when appellant was out
in the back.  The customer confirmed that the complainant had gone inside the
shop.  Appellant testified that he was angry at the complainant for taking his
money.  

            Later that evening, appellant was outside
cleaning up the shop when the complainant rode up to the shop on his bicycle.  Appellant
testified that he asked the complainant why he was always stealing money from
him.  In response, appellant explained, the complainant charged at appellant. 
Appellant said he did not have a weapon at this point.  After the complainant
charged at appellant, appellant grabbed a tire brush and used the brush to
knock a fishing knife out of the complainant’s hands.  The two men then fought
for the knife and eventually appellant was able to get control of it. 
Appellant testified that after he got the knife, he noticed another weapon in
the complainant’s hands, but could not distinguish what it was.  The
complainant continued to charge at appellant and then suddenly the complainant
left.  Appellant testified that the complainant walked next door to a hamburger
restaurant.  Appellant said he did not know that he had stabbed the
complainant.  After the complainant left, appellant said that he went back
inside his auto shop to get a larger knife to defend himself.  When he came
back outside appellant did not see anyone.  Appellant went inside again to get
clothes for the next day and lawn tools because he was going to do another job
that night.  Appellant packed up his van and drove off.  Appellant testified
that if he knew the complainant had been stabbed, he would have stayed to help
him.   

Discussion

I.         Is
the evidence legally and factually sufficient to support appellant’s      conviction?

            Appellant contends the evidence is legally
and factually insufficient to support his conviction because (1) he did not
have the requisite intent to cause death or serious bodily injury, nor was he
aware his conduct was reasonably certain to cause death, (2) a knife is not a
deadly weapon per se, (3) his self-defense argument was corroborated by a
credible witness, and (4) self-defense was justified because of appellant’s
awareness of the complainant’s violent and belligerent nature. 

            A.        Standard of Review

            In a legal sufficiency review, we view all
the evidence in the light most favorable to the verdict and determine whether
any rational trier of fact could have found the essential elements of a crime
beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319, 99
S. Ct. 2781, 2789, 61 L. Ed. 2d 569 (1979); Salinas v. State, 163 S.W.3d
734, 737 (Tex. Crim. App. 2005).  The jury, as the sole judge of the
credibility of the witnesses, is free to believe or disbelieve all or part of a
witness’ testimony.  Jones v. State, 984 S.W.2d 254, 257 (Tex. Crim.
App. 1998).  The jury may reasonably infer facts from the evidence presented,
credit the witnesses it chooses to, disbelieve any or all of the evidence or
testimony proffered, and weigh the evidence as it sees fit.  Sharp v. State,
707 S.W.2d 611, 614 (Tex. Crim. App. 1986).  Reconciliation of conflicts in the
evidence is within the jury’s discretion and such conflicts alone will not call
for reversal if there is enough credible evidence to support a conviction.  Losada
v. State, 721 S.W.2d 305, 309 (Tex. Crim. App. 1986).  An appellate court
may not re-evaluate the weight and credibility of the evidence produced at
trial and in so doing substitute its judgment for that of the fact finder.  King
v. State, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000).  Inconsistencies in
the evidence are resolved in favor of the verdict.  Curry v. State, 30
S.W.3d 394, 406 (Tex. Crim. App. 2000).  We do not engage in a second
evaluation of the weight and credibility of the evidence, but only ensure the
jury reached a rational decision.  Muniz v. State, 851 S.W.2d 238, 246
(Tex. Crim. App. 1993); Harris v. State, 164 S.W.3d 775, 784 (Tex.
App.—Houston [14th Dist.] 2005, pet. ref’d).

            In a factual sufficiency review, we consider all
the evidence in a neutral light.  Prible v. State, 175 S.W.3d 724,
730–31 (Tex. Crim. App. 2005).  The evidence may be factually insufficient in
two ways.  Id. at 731.  First when considered by itself, the evidence
supporting the verdict may be so weak that the verdict is clearly wrong and
manifestly unjust.  Id.  Second, where the evidence both supports and
contradicts the verdict, the contrary evidence may be strong enough that the
beyond-a-reasonable doubt standard could not have been met.  Id.  In
conducting a factual sufficiency review, we must employ appropriate deference
so we do not substitute our judgment for that of the fact finder.  Jones v.
State, 944 S.W.2d 642, 648 (Tex. Crim. App. 1996).  Our analysis must
consider the evidence appellant claims is most important in allegedly
undermining the jury’s verdict.  Sims v. State, 99 S.W.3d 600, 603 (Tex.
Crim. App. 2003).  

            B.        Analysis

            A person commits murder if he intentionally or
knowingly causes the death of an individual or intends to cause serious bodily
injury and commits an act clearly dangerous to human life that causes the death
of an individual.  Tex. Penal Code § 19.02 (Vernon 2009).  A person acts
intentionally, or with intent, with respect to the nature of his conduct or to
a result of his conduct when it is his conscious objective or desire to engage
in the conduct or cause the result.  Tex. Penal Code § 6.03(a) (Vernon 2009). 
A person acts knowingly, or with knowledge, with respect to the nature of his
conduct or to circumstances surrounding his conduct when he is aware of the
nature of his conduct or that the circumstances exist.  Tex. Penal Code §
6.03(b) (Vernon 2009).  A person acts knowingly, or with knowledge, with
respect to a result of his conduct when he is aware that his conduct is
reasonably certain to cause the result.  Id.  

                        1.         Culpable Mental State

            Appellant contends the evidence is
insufficient to support a finding of intent to cause death or serious bodily
injury.  Proof of a mental state, such as intent, must almost always be proved
by circumstantial evidence.  Smith v. State, 56 S.W.3d 739, 745 (Tex.
App.—Houston [14th Dist.] 2001, pet. ref’d).  Eric Cooper testified that before
the complainant arrived at appellant’s shop, appellant was angry at the
complainant for stealing money from him, and when the complainant arrived
appellant immediately confronted complainant and “hit” him in the chest. 
Appellant, himself, explained that he had in fact been angry at the complainant
for stealing money from him.  A reasonable juror could have concluded appellant
was angry at the complainant for taking his money and therefore had motive to
kill or cause serious bodily harm to the complainant.  Additionally, Marshall
Smith testified that appellant told him he had stabbed the complainant over a
dispute about twenty dollars.  Motive is a significant circumstance indicating
guilt.  Guevara v. State, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004). 
Intent may be inferred from circumstantial evidence such as acts, words, and
the conduct of appellant.  Id.  Furthermore, evidence of flight is
admissible as a circumstance from which a jury may draw an inference of guilt. 
Bigby v. State, 892 S.W.2d 864, 883 (Tex. Crim. App. 1994).  Smith
testified that appellant told him that after he stabbed the complainant, he
immediately fled the scene in his van.  Appellant himself corroborated Smith’s
testimony and told the jury that after the fight he left in his van.  Salgado
also testified that she saw appellant grab some items from his shop and then
drive away in his van.  Appellant’s immediate departure from the scene is
conduct from which appellant’s intent may be inferred.  See Guevara, 152
S.W.3d at 50.  If the stab was merely an accident or self-defense as appellant
now contends, it would be reasonable for a juror to conclude that appellant
would not have immediately fled, and would instead have inquired into the
complainant’s safety.  Finally, a jury may infer intent from the extent of the
injuries.  Patrick v. State, 906 S.W.2d 481, 487 (Tex. Crim. App. 1995).
The knife that caused the complainant’s death went four and one half inches
deep into the complainant’s chest, so as to penetrate his heart.  A reasonable
juror could have concluded that stabbing a person with a knife so deeply that
it penetrates the victim’s heart demonstrates evidence of intent to kill, because
it is conduct that reasonably certain to or cause serious bodily injury because
it is conduct that is reasonably certain to cause death.  

            Viewing this evidence in the light most favorable
to the verdict, a reasonable juror could have found the evidence was legally
sufficient to support a finding that appellant had the requisite intent.  When
viewed in a neutral light, the evidence supporting a finding of intent is not
so weak as to be manifestly unjust, nor is contrary evidence so strong that the
beyond-a-reasonable doubt standard could not have been met.  Therefore, the
evidence is factually sufficient to support the jury’s finding on the element
of intent.  

                        2.         Deadly Weapon Finding

            Appellant argues that a knife is not a
deadly weapon per se.  Appellant does not explain why it is necessary
that we find a knife to be a deadly weapon per se to support his conviction. 
We will construe appellant’s argument to contend that the evidence is legally
and factually insufficient to support an element alleged in the indictment,
namely that appellant used a deadly weapon to cause the death of the complainant. 


            A deadly weapon is a firearm or anything
manifestly designed, made, or adapted for the purpose of inflicting death or
serious bodily injury; or anything that in the manner of its use or intended
use is capable of causing death or serious bodily injury.  Tex. Penal Code §
1.07(a)(17) (Vernon 2009).  Although a knife is not a deadly weapon per se, the
Court of Criminal Appeals has held that an object, such as a knife, can be a
deadly weapon if the actor intends to or actually uses the object to cause
death or serious bodily injury.  See Thomas v. State, 821 S.W.2d 616,
620 (Tex. Crim. App. 1991).  Bayonets, scimitars, and swords of various kinds
are designed for such purpose and, therefore, could qualify as deadly weapons
within the meaning of the penal code.  Id.  Kitchen knives, utility
knives, straight razors, and eating utensils are manifestly designed and made
for other purposes and, consequently, do not qualify as deadly weapons unless
actually used or intended to be used in such a way as to cause death or serious
bodily injury within the meaning of the penal code.  Id.  Whether a
particular knife is a deadly weapon by design, a deadly weapon by usage, or not
a deadly weapon at all, therefore, depends upon the evidence.  Id. 

            Cooper testified that he saw a small steak knife
in appellant’s hand after the complainant said he had been stabbed.  Appellant
testified that the knife he took from complainant was a fishing knife. 
Appellant admitted to fighting to get the knife out of the complainant’s
hands.  However, appellant claimed he did not realize he had stabbed the
complainant, and in fact went inside his house to get a larger knife for better
protection.  Smith testified appellant told him that he had stabbed the
complainant in the heart with a knife and then watched the complainant fall to
the ground.  According to Smith’s testimony, appellant said the only injury
suffered by the complainant was a knife wound to the heart.  Houston Police
Officer Aldolfo Carillo testified that based on his experience working with
HPD’s homicide division, he believes that a knife is a deadly weapon.  The
Deputy Chief Medical Examiner Dr. Dwayne Wolf testified that the cause of
complainant’s death was a stab wound to the chest.  He further explained that a
knife is the kind of weapon that could cause someone’s death.  

            Furthermore, appellant used the knife in a manner
which could be fatal to human life and in fact was.  See Tex. Penal Code
§ 1.07(a)(17)(B) (Vernon 2009).  Cooper testified that he saw appellant “hit”
the complainant in the chest, and later saw a knife in appellant’s hands.  This
evidence supports a reasonable inference that appellant hit the complainant in
the chest with the knife.  Hitting someone in the chest with enough force to
penetrate the victim’s heart is using a knife in a deadly manner.    

            Viewing this evidence in the light most favorable
to the verdict, it is reasonable to conclude any juror could have found the
knife used by appellant to cause the death of the complainant was a deadly
weapon.  Therefore, the evidence is legally sufficient to support the jury’s
finding that appellant used a deadly weapon as alleged in the indictment.  Furthermore,
the evidence supporting the deadly weapon finding is not so weak that the
verdict is clearly wrong and manifestly unjust.  In addition, the only contrary
evidence presented was appellant’s claim that he was unaware the knife he used
caused the death of the complainant.  The jury is the judge of credibility of
the witnesses, and it is free to believe or disbelieve any portion of the
witnesses’ testimony.  Jones, 984 S.W.2d at 257.  It is reasonable that
the jurors did not believe appellant’s testimony that he was unaware he had
stabbed the complainant.  Viewing this evidence in a neutral light, the
evidence is factually sufficient to support the jury’s finding appellant used a
deadly weapon as alleged in the indictment.

                        3.         Self-Defense

            Appellant challenges the factual
sufficiency of the evidence supporting the jury’s rejection of his self-defense
claim.  Appellant contends because his self-defense argument was unchallenged
by a credible witness, the jury’s implicit rejection of his self-defense claim
is not supported by the evidence.  Furthermore, he claims that because he knew
of the complainant’s dangerous propensities he was justified in defending
himself.   

                                    a.         Standard of
Review   

            An accused bears the burden of producing some
evidence in support of a claim of self-defense.  Saxton v. State, 804
S.W.2d 910, 914 (Tex. Crim. App. 1991).  Once the accused produces such
evidence, the burden falls upon the State to disprove the raised defense.  Id.
at 913–14.  The State’s burden of persuasion is not one that requires the
production of evidence; rather, it requires only that the State prove its case
beyond a reasonable doubt.  Id. at 913.  The issue of self-defense is a
fact issue for the jury and a verdict of “guilty” is an implicit finding
rejecting an accused’s self-defense theory.  Id. at 913–14.

            When reviewing a legal sufficiency challenge on
the issue of self-defense, a reviewing court views the evidence in the light
most favorable to the verdict to see if any rational trier of fact could have
found (1) the essential elements of murder beyond a reasonable doubt, and (2)
against appellant on the self-defense issue beyond a reasonable doubt.  See
Saxton, 804 S.W.2d at 914.  When evaluating a challenge to the
factual sufficiency of the evidence supporting the fact finder’s rejection of a
claim of self-defense, we review all of the evidence in a neutral light.  Zulani
v. State, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003). 

                                    b.         Analysis

            A person may use force in self-defense
when and to the degree he reasonably believes the force is immediately
necessary to protect himself against the other’s use or attempted use of
unlawful force.  Tex. Penal Code § 9.31 (Vernon 2009).  Deadly force may be
used if the use of force would be justified under section 9.31, and a
reasonable person in the actor’s situation would not have retreated; and when and
to the degree he reasonably believes the deadly force is immediately necessary
to protect himself against the other’s use or attempted use of unlawful deadly
force.  Tex. Penal Code § 9.32 (Vernon 2009).

            Appellant contends Julia Salgado is a credible witness
and because her testimony supports appellant’s self-defense theory the jury
should not have rejected it.  The jury is the exclusive judge of the
credibility of the witnesses and of the weight to be given to their testimony. 
Jones, 944 S.W.2d at 647.  Thus, it was up to the jury to decide whether
Salgado was a credible witness.  Furthermore, Salgado testified she saw two men
yelling and running after one another.  Her testimony does not support or
refute appellant’s self-defense claims.   

            Additionally, Cooper testified that he watched
appellant attack the complainant without any provocation from the complainant. 
Smith testified that appellant told him he stabbed the complainant in the heart
and watched him fall to the ground.  Appellant also told Smith that he wanted
to attempt to put together a self-defense case to exonerate himself.  The only
person who testified to there being a fight between the two men was the
appellant.  It is within the sole province of the jury to reconcile the
conflicts and contradictions in the evidence.  Chiles v. State, 988
S.W.2d 411, 415 (Tex. App.—Houston [1st Dist.] 1999, pet. ref’d).  After
viewing all the evidence in the light most favorable to the prosecution, any
rational trier of fact could have found against appellant on the self-defense
issue beyond a reasonable doubt.  Viewing this evidence in a neutral light, any
reasonable juror could have rejected appellant’s claim of self-defense and
found that the State proved the elements of murder beyond a reasonable doubt.  

            As part of his self defense claim, appellant also
contends that, because he was aware of the complainant’s violent nature when he
was under the influence of drugs and alcohol, he was justified in using
self-defense.  As established above, the evidence does not support a finding
that the complainant attacked appellant.  Therefore, because the evidence is
legally and factually sufficient to support the jury’s implicit rejection of
appellant’s self-defense claim, we find this argument has no merit.

            In light of the above, appellant’s first and
second issues are overruled.  

II.        Did the trial court err in admitting the
testimony of Marshall Smith?

            Appellant contends the trial court erred
in admitting the testimony of Marshall Smith under Texas Rule of Evidence 403,
because its probative value was substantially outweighed by the danger of
unfair prejudice.  Appellant concedes he did not object to Smith’s testimony,
but argues “the testimony was so violative of [r]ule 403, the judge
should have, on his own motion, excluded the testimony of Marshall Smith.”  We
hold appellant has waived this issue.  To preserve error for appellate review,
the complaining party must make a timely, specific objection.  Tex. R. App. P.
33.1(a); Turner v. State, 805 S.W.2d 423, 431 (Tex. Crim. App. 1991).  The
point of error on appeal must correspond to the objection made at trial.  Thomas
v. State, 723 S.W.2d 696, 700 (Tex. Crim. App. 1986).  Appellant objected
to Smith’s testimony on the basis of hearsay and not under rule 403. 
Accordingly, we hold appellant has failed to preserve error on this issue. 
Appellant’s third issue is overruled.

Conclusion

            Having
overruled all of appellant’s issues on appeal, we affirm the judgment of the
trial court.  

                                                                                    

                                                                        /s/        John
S. Anderson

                                                                                    Justice

 

 

 

Panel consists of Chief
Justice Hedges and Justices Anderson and Mirabal.[1]

Do
Not Publish — Tex. R. App. P. 47.2(b).

 

 

 









[1] Senior Justice Margaret
Garner Mirabal sitting by assignment.